FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

OCT 1 6 2006

at 9 o'clock and 30 min. AM
SUE C.        CLERK
By

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CATHERINE JANE VON KENNEL GAUDIN, nka LYNCH, | ) ) ) | Civil No. 00-00765 SPK |
| Petitioner, | ) ) ) | RESPONDENT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| v. | ) ) ) | |
| JOHN R. REMIS, JR., | ) ) ) | |
| Respondent. | ) ) ) | Hearing Date: October 24, 2006 Judge: SAMUEL P. KING |

## RESPONDENT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

A hearing was held on October 24, 2006, pursuant to the remand of the United States Court of Appeals for the Ninth Circuit No. 03-15687 to determine (a) whether, under the present circumstances, there would be a grave risk of psychological harm to the two children of the parties if they were returned to Canada and, if so, whether or not such risk can be minimized or eliminated through some alternative remedy and (b) whether or not the children object to being returned and have attained an age and degree of maturity at which it is appropriate to take account of their views.

The Court enters the following Findings of Fact and Conclusions of Law pursuant to Federal Rules of Civil Procedure, Rule 52.

### FINDINGS OF FACT

1. Petitioner, Catherine Jane Von Kennel Gaudin, nka Catherine Lynch, (hereinafter "Gaudin") and Respondent, John R. Remis, Jr. (hereinafter "Remis") are the parents

1

of John Anolani Remis IV (hereinafter "John"), born on September 17, 1990, and Andreas Wailani Remis (hereinafter "Andreas"), born on June 23, 1992. Both children were born in Honolulu, Hawaii.

2.   In December 2000, this Court denied Gaudin's Petition herein for the return of the parties' children to Canada, after having determined Respondent Remis had met his burden of demonstrating by clear and convincing evidence that the children would be subject to a grave risk of psychological harm if they were returned to Gaudin.

3.   In 2001, the Family Court of the First Circuit, State of Hawaii (in FC-P No. 93-0625 and FC-P No. 93-0925), awarded sole legal and physical custody of the children to Respondent Remis, after also determining, by clear and convincing evidence that the return of the children to their mother would subject them to a grave risk of psychological harm. The Family Court ordered any visitation by Gaudin with John shall not take place unless recommended by Pamela Merez, Ph.D., John's psychological therapist. Visitation with John was further limited to the concurrent recommendation of the therapist for Gaudin after said therapist has consulted with Dr. Merez and if deemed appropriate by both therapists, take place in a therapeutic setting. Visitation by Gaudin with Andreas was ordered to be subject to the recommendations of the therapist for Andreas. Andreas was also under the care of Dr. Merez. Gaudin was ordered to undergo a psychological evaluation and follow any recommendations made by the evaluator. If continuing mental health treatment is required of Gaudin, Gaudin shall consent to the release of her psychological evaluation to the children's therapist Dr. Merez and further consent to communication between Dr. Merez and Gaudin's therapist. There was no restriction placed upon Gaudin from telephoning John and Andreas.

4.      Since June 2000, John, then 9 years old and Andreas, then 8 years have lived continuously at the same residence with Remis. John is now 16 years old; he is a junior at Roosevelt High School where he participates in varsity cross-country and track. John does well academically. Andreas, now 14 years old, is a freshman at Roosevelt High School, where he is a member of the junior varsity football team. Andreas does well academically. John and Andreas are extremely close to each other and their father Remis. John and Andreas keep a similar daily schedule, help each other with homework, share household chores and engage in numerous family activities with their father. The boys play football together with their father on almost a daily basis, go to the beach almost every Sunday where they play together and with their father, attend social and cultural events with their father and visit often with their "Hanai uncle", Paul Deering and his wife Nicole. John and Andreas respect and love their father and feel safe with him.

5.      Gaudin has not spoken to either John or Andreas for almost six years. It was January 2001 that Gaudin last telephoned the boys. The only communications Gaudin has had with John and Andreas in the past six years has been the sending of religious pamphlets which contain underlined or highlighted verses. Gaudin has never written a letter to John and Andreas, has not sent them a birthday card or holiday greeting, and has not sent them a present on any occasion. There is no relationship between Gaudin and the boys. John and Andreas strenuously object to their return, together or separately, to Gaudin under any circumstance.

6.      Gaudin and her husband/attorney Paul Lynch, Esq., have lived in Kailua, Hawaii since 2001. Gaudin has not complied with any of the requirements ordered by the Hawaii State Family Court to achieve visitation with the children. She has not made any attempts to maintain a relationship with John or Andreas. Gaudin has stated to this Court that

she moved to Hawaii to be close to the boys during the pendency of this litigation. Gaudin has not paid any child support although ordered to do so in August 2001. Petitioner's attorney, Paul A. Lynch, the children's 'step-father', has represented to this Court that Gaudin considers herself the "victim" in this litigation.

7. By reason of the psychological abuse of John and Andreas by Petitioner Gaudin, they have undergone psychotherapy with Pamela Merez, Ph.D. John attended 16 therapy sessions with Dr. Merez between January 5, 2001 and January 24, 2002. Andreas attended 17 therapy sessions with Dr. Merez. John and Andreas were discharged from therapy by Dr. Merez after their last session on January 24, 2002. Andreas recently saw Dr. Merez on October 12, 2006. Dr. Merez did not find necessary to see John. Gaudin, although given the opportunity to meet with Dr. Merez to discuss the children's care, refused to do so unless her attorney/husband was also present and given access to their records. When Dr. Merez would not permit such, Gaudin left her office.

8. John, age 16, objects unequivocally to his return to Canada and absolutely to Gaudin. He believes firmly his brother Andreas should also absolutely stay in Hawaii with their father and not be returned to Canada or Gaudin. John loves and respects his father's inexhaustible efforts to protect him and Andreas from Gaudin's controlling ways. John feels living with his mother was like being in a concentration camp. He and Andreas recall clearly that they were living against their will in Canada in an unloving, isolated, and antisocial atmosphere imposed by their mother. A return to their mother would be unbearable because they would be virtual prisoners. John recalls in fear that his mother did not let him and Andreas do anything that she did not think was "righteous". Returning to their mother would mean total isolation and a return to Bible study which is Gaudin's top priority. She has testified that she

4

wants to make the children into good Christian soldiers. John fears his mother because she does not acknowledge him or Andreas as individuals. John also states that it would be unthinkable to return Andreas to Canada. Such action would leave him very sad and angry. He believes his brother would run away rather than be subjected to Gaudin's religious fanaticism and her hatred of Remis. John fears for Andreas being with someone who hates Remis whom Andreas loves. John is angry that Gaudin has made no attempts to have a relationship with them in more than five years but wants to take them back to Canada. John recalls clearly that his mother never even looked at him when he appeared in this Court in December 2000 with his Guardian Ad Litem for the first hearing in this matter and was deeply hurt that Gaudin rejected the opportunity to visit with him and his brother as suggested by the Guardian Ad Litem. John believes Gaudin's conduct in the past five years demonstrates she has not changed. Given how close the brothers are, John and Andreas would suffer tremendously if they were now separated. John clearly understands the current circumstances and his statements are mature opinions based on facts.

9.   Andreas is now 14. He has recently been seen by Dr. Merez. Dr. Merez is of the opinion that Andreas would be subjected to a grave risk of psychological harm if he were returned to Canada. Dr. Merez finds Andreas to have a very close bond with his brother John and his father Remis. John and Andreas have been dependent upon each other in coping with the various problems they experienced with their mother (Gaudin) while living in Canada. Andreas strenuously objects to being taken away from Remis and John. He therefore has no wish to be returned to his mother no matter where she may be. Andreas states Gaudin is a stranger to him and he fears being subjected to her total control and 'imprisonment.'. This is especially so as the only communication he has received from her in six years has been religious booklets. Andreas is sad that his mother has never asked him how he feels. He does not believe she cares in

anyway about him as a person. Andreas recalls the abusive manner in which he was treated by his mother and retains anger as to how his mother treated his brother John. Andreas recalled how Bible studies disturbed him but especially John. Andreas recalled with anger how John would cry, have chest pains and difficulty breathing, and sit and rock back and forth because he could not stand the pressure of all the Bible work. Andreas also deeply resents the bad statements his mother has made about his father; she has repeatedly called Remis 'Satan' or a friend of Satan. Andreas has also heard Paul Lynch, Esq., his 'step-father', argue in court and speak very negatively about Remis. Although Andreas states he misses having a mother, he does not miss Gaudin.

      Andreas is a very sociable young man who is a good student and athlete. Andreas is most enthusiastic about football and enjoys practice each day and the camaraderie of his teammates and friends. He has adjusted well to high school and his expanding social network. Since the only contact Andreas has had with his mother concerns Bible work, such is a present extension of his past experiences with her and impacts Andreas negatively. As Gaudin has maintained she intends to home school the boys, this creates a greater fear in Andreas as not being able to have any friends or do what he loves the most, play football. Dr. Merez believes the totality of circumstances, if Andreas were returned to Canada alone, would serious affect his mental health and present a grave risk of psychological harm. The return of Andreas to Gaudin and Paul Lynch, Esq., would place him in an intolerable situation. To live with Gaudin whom he considers a threat as well as an uncaring stranger and with his step-father, a total stranger who has expressed personal animosity towards Remis in his misguided belief that Gaudin is the victim in this long-standing case. As an experienced child and family therapist for many years, Dr. Merez concludes Andreas would suffer emotional and mental trauma to be separated from

his brother and father. Dr. Merez does not believe any alternative remedial solution is appropriate. Further, Dr. Merez believes Andreas, at 14, to be of sufficient age and maturity to choose; Andreas has articulated a clear understanding of the circumstances of this case in choosing to remain with his father and brother in Hawaii. Dr. Merez supports Andreas' choice.

      10. Dr. Pamela Merez testified that she has had sufficient number of sessions with John and Andreas to form an opinion with respect to each child with reasonable certainty. John and Andreas are teenagers who have thrived in the care of their father. John was maturing nicely and developing appropriately to his age group. Andreas was last see by Dr. Merez on October 12, 2006. Dr. Merez states unequivocally that Andreas has very close and trusting relationship with John and Remis. He is a very intelligent and articulate 14 years old. Given the history he has reported to her, Dr. Merez finds that Andrea's objection to being removed from his brother and father and his objection to being returned to Canada or his mother are well thought out and stated with clarity and understanding. Dr. Merez believes that given Gaudin's apparent refusal to participate in the children's life, a return of either child to Gaudin would expose each to a grave risk of psychological harm and place each in an intolerable situation. She believes the harm would be exacerbated by returning Andreas alone to Canada.

      Dr. Merez also stated that Gaudin showed up with Paul Lynch, Esq., at her office. Gaudin refused to talk about the children unless her husband/attorney was present. Dr. Merez did not believe it was appropriate and stopped the meeting.

      The court accepts Dr. Merez's testimony, including her declaration and gives it appropriate weight.

11. Dr. Paul Deering, is a professor of education at the University of Hawaii and has known John and Andreas since late June 2000. Dr. Deering is qualified as an expert in the field of education and in particular, early adolescence.

Dr. Deering first notes children need to be stimulated in 4 areas for their normal growth and development: social, intellectual, emotional, and physical. Most of the education and learning process involve socialization. This is particularly so as a child reaches 10 to 15 years in age and start testing their independence. This process continues through their adolescent years. They need opportunities to associate themselves with various groups, such as schools, students(?), neighbors, community, to find their own identity. Children need to have outside contacts, other adults, and peer challenges to learn to think for themselves in making choices.

Dr. Deering has seen John and Andreas do very well in adjusting to life in Hawaii and extending themselves in all areas needed for transition to adulthood. John is 16 and well adjusted. He continues to learn, socialize, and experiment, to becoming a productive individual. Andreas is in this age group and very much involved in development need for socialization at school and at home. Gaudin's steadfast intent to mode the children into good Christians by isolation including home-schooling, would deprive Andreas of his much needed socialization and other stimuli necessary for all aspects of his development and well being. Home-schooling alone would be a traumatic change in the children's life which would be disruptive of their present development.

12. Dr. Deering also notes that at a minimum, the physical needs of a child include food, shelter, clothing, education, supervision, protection and health care. Emotional needs of a child must also be met. A child needs parental support to fulfill dependency needs, foster independence, instill a sense of responsibility, and promote self-esteem. Additionally, a

child needs the opportunity for social relationships, friendships, and a sense of community. The manner in which Gaudin has controlled the children, coupled with her failure to comply with the orders of the Hawaii Family Court as well as her continued biblical communications to John and Andreas suggest a return to such a stark environment would be emotionally devastating to the boys, especially Andreas. That Gaudin has not spoken to either John or Andreas in about 6 years is in itself emotionally draining. For Gaudin to now remove the boys to Canada without knowing who they are as young adults would be inconsistent with their growth and maturity. Their emotional and other fundamental needs are well served by their father who encourages their independence, affords them a sense of responsibility and participates in their community.

13. Gaudin does not meet the emotional or other needs of the children and is indifferent and/or unable understand or accept them as individuals. Her choice to remain absent from the boys' lives in the past 6 years supports her apparent indifference or inability to parent them. The boys see Gaudin as a stranger with a very disturbing past. The boys have not ever met Paul Lynch, Esq., except in December 2000, when they appeared in court for the first hearing in this matter and heard Paul Lynch, Esq., wrongfully attack their father.

14. Gaudin's past with the children supports a finding that the return of either child would expose each to a grave risk of psychological harm and/or place each in an intolerable situation. When the boys were 8 and 9, Gaudin isolated the boys from any social relationships except those available at her particular church on Sundays. The boys reported they had no friends in Canada; Gaudin did not permit them to eat lunch with their peers, limited visits to their home by a schoolmate on condition that they would study the Bible with the boys and then be allowed to play. Gaudin did not enroll them in any extracurricular activity at their school. Gaudin did not allow any other activities outside of her church. The boys reported they could

not visit classmates at the latters' homes, not permitted to go to parties, did not go anywhere or do anything except study the Bible, play at home and go to church. Gaudin did not participate in any parent-teacher conferences or other social events at school. Gaudin kept the boys home from school at times or caused them to arrive late by reason of her imposed Bible study or failure to complete Bible work. Gaudin gave the boys no sense of community. Gaudin's church is an hour's drive each way from their residence. Gaudin's next-door neighbors of six and one-half years have never been in her home nor has she been in theirs. The isolation and authoritative conduct of Gaudin caused extreme anger and fear in the boys. The very restricted contacts/activities and limited studies do not provide for the children's intellectual curiosity or any other needs. At present, both John and Andreas are of an age where continued socialization and activities are critical to their growth and development.

15. There appears to be no ongoing relationship between Gaudin and the children.

16. Dr. Paul Deering testimony, including his Declaration, is credible and relevant and given appropriate weight by this Court.

17. John is 16 years of age. He is mature and has a clear understanding of these proceedings. He objects to his return to Canada and Gaudin. He has also indicated that he and Andreas are very close and objects to the return of his brother to Canada.

17. Andreas is 14 years of age. He is very close to John and their father Remis. He is a well spoken young man. The Court finds that he is of sufficient age and maturity to voice his objection to his return to Canada and/or Gaudin.

18. Remis has a loving, trusting, and close relationship with the children and conducts himself as a caring and concerned father. There is an extremely close bond between

John and Andreas and also between them and Remis. Severing the relationships between John and Andreas and their father by returning Andreas to his mother would present a grave risk of psychological harm to Andreas. Such would also place Andreas in an intolerable situation.

19. Remis is the sole supporter of the children[1]. He is an attorney duly licensed in the State of Hawaii. He is a solo practitioner with an office in Honolulu. It would be an extreme hardship for him to move to Canada to stay with Andreas and leave John in Honolulu alone to care for himself. It would also be an extreme financial burden to leave his practice, the sole source of income, and continue to support the children in two locales.

20. There is no evidence that a viable alternative remedy exists for the return of Andreas without exposing him to a grave risk of psychological harm or placing him in an intolerable situation.

## PROPOSED CONCLUSIONS OF LAW

1. Article 4 of the Hague Convention states The Convention shall apply to any child who was habitually resident in a Contracting State immediately before any breach of custody or access rights. The Convention shall cease to apply when the child attains the age of 16 years. John Anolani Remis, IV, has attained the age of 16 years. The Convention no longer applies to John Anolani Remis, IV. The petition seeking the return of John Anolani Remis, IV to Petitioner in Canada is hereby dismissed.

2. An Article 13(b) defense under the Hague Convention to the petition for the return of a child must be proven by clear and convincing evidence. By clear and convincing evidence, the Court concludes that Andreas Wailani Remis would be subject to grave risk of psychological harm if returned to Gaudin.

---

[1] Gaudin has failed and refused to pay the child support ordered by the Hawaii Family Court of the First Circuit. She has not contributed in any way to the children.

3.  Pursuant to Article 13 of the Hague Convention, this Court further concludes by clear and convincing evidence that the return of Andreas Wailani Remis to Gaudin would place Andreas in an intolerable situation.

4.  The Court further concludes that there is no alternative remedy that would remove Andreas from a grave risk of psychological harm or from being placed in an intolerable situation if returned to Canada or Gaudin.

5.  Pursuant to Article 13(b) of the Hague Convention, the Court concludes that Andreas Wailani Remis is of sufficient age and maturity to express his choice and objection, based on a ,preponderance of the evidence standard. As in McManus v. McManus, 354 F.Supp.2d 62 (D.Mass. 02/04/2005), the Court further concludes that Andreas' objection to be returned to Canada and to his mother should be taken into account and given credence. In view of all the evidence presented, in particular Dr. Merez and John's testimony, the Court concludes that Andreas's objection is well articulated and should be honored.

6.  Accordingly, Gaudin's petition is denied.

DATED: Honolulu, Hawaii, _____.

_____
SAMUEL P. KING
SENIOR JUDGE OF THE UNITED
STATES DISTRICT COURT

PROPOSED FINDINGS OF FACT AND CONLCUSIONS OF LAW: GAUDIN V. REMIS, UNITED STATES DISTRICT COURT: DISTRICT OF HAWAII; CIVIL NO. 00-00765 SPK