w SPK

ORIGINAL

CHUNMAY CHANG #3302
737 Bishop Street, Suite 2100
Honolulu, Hawaii 96813
Tel. 808-536-2288
Fax 808-536-8807
Attorney for Respondent

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

OCT 17 2006

at 11 o'clock and 24 min. PM
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CATHERINE JANE VON KENNEL GAUDIN, nka LYNCH, | ) ) ) | Civil No. 00-00765 SPK |
| Petitioner, | ) ) ) | DECLARATOIN OF JOHN R. REMIS, JR.; |
| v. | ) ) | EXHIBITS A-D |
| JOHN R. REMIS, JR., | ) ) ) | |
| Respondent. | ) ) ) | Hearing Date: October 24, 2006 Senior Judge: SAMUEL P. KING |

**DECLARATION OF JOHN R. REMIS, JR.**

JOHN R. REMIS, JR., an attorney duly licensed to practice law in the State of Hawaii and before the United States District Court for the District of Hawaii, hereby declares under penalty of perjury that the following are true to the best of my knowledge unless otherwise stated upon information and belief:

1. Your Declarant is the Respondent herein and makes this Declaration in opposition to the Petition for the return of the Children to Petitioner. This Declaration is made in lieu of my direct testimony before this Court.

2. Petitioner, Catherine Jane Von Kennel Gaudin, nka Catherine Lynch, (hereinafter "Gaudin") and Respondent, John R. Remis, Jr. (hereinafter "Remis") are the parents of John Anolani Remis IV (hereinafter "John"), born on September 17, 1990, and

Andreas Wailani Remis (hereinafter "Andreas"), born on June 23, 1992. Both children were born in Honolulu, Hawaii. John is now 16 years old and Andreas 14 years old.

       3. In December 2000, this Court denied Gaudin's Petition herein for the return of the parties' children to Canada, after having determined Respondent Remis had met his burden of demonstrating by clear and convincing evidence that the children would be subject to a grave risk of psychological harm if they were returned to Gaudin.

       4.      In 2001, the Family Court of the First Circuit, State of Hawaii (in FC-P No. 93-0625 and FC-P No. 93-0925), awarded sole legal and physical custody of the children to Respondent Remis, after also determining, by clear and convincing evidence, that the return of the children to Gaudin would subject them to a grave risk of psychological harm. The Family Court ordered any visitation by Gaudin with John not take place unless recommended by Pamela Merez, Ph.D., John's psychological therapist. Visitation with John was further limited to the concurrent recommendation of the therapist for Gaudin after said therapist had consulted with Dr. Merez and, if deemed appropriate by both therapists, take place in a therapeutic setting. Visitation by Gaudin with Andreas was ordered to be subject to the recommendations of Dr. Merez, also the therapist for Andreas. Gaudin was ordered to undergo a psychological evaluation and follow any recommendations made by the evaluator. If continuing mental health treatment were required of Gaudin, Gaudin was to consent to the release of her psychological evaluation to Dr. Merez and further consent to communication between Dr. Merez and Gaudin's therapist. There was no restriction placed upon Gaudin from telephoning or writing John and Andreas. Gaudin was also ordered to pay child support as of August 2001. Gaudin has never complied with these orders.

5. Since June 2000, John, then 9 years old and Andreas, then 8 years have lived continuously at the same residence with Remis. The boys enjoy great stability in their lives. When the boys first arrived, they had no sports motor skills. Remis devoted much time training the boys in sports, including baseball, basketball and football. The boys responded and became athletes. John, now and a junior at Roosevelt High School, is on the varsity cross-country and track teams. This accomplishment has provided John access to a wider social group amongst his team-mates. John has also learned to balance school work with athletics. John does well academically and expects mostly A's and B's on his first quarter report card due October 19, 2006. Andreas, now is a freshman at Roosevelt High School, where he is a wide-receiver for the junior varsity football team. Andreas too has expanded his circle of friends through athletics. Andreas lives for football, reading the sports section of the morning paper and *Sports Illustrated*. Andreas nonetheless does well academically, expecting A's and Bs on his upcoming report card.

Remis has been extremely close with John and Andreas since they moved to Hawaii in June 2000. Remis now takes the boys to his gym on Sundays where they shoot baskets, weight lift and play ping pong. After the gym Remis and the boys enjoy a swim at Waikiki where they swim, boogie-board and play football.

Remis has followed the boys closely through Pauoa Elementary, where he currently serves as a community representative on the Pauoa School Board, Kawananakoa Middle School and now Roosevelt High School. Remis attends all parent-teacher nights and assures the boys maintain their studies. Two years ago, when John had to report on Jamestown, Virginia, Remis incorporated a trip to Jamestown with a visit

to Grandma Remis, soon to be 88. Andreas brings a football on all trips and enjoys counting the number of states he has caught passes.

John and Andreas now keep a similar daily schedule and help each other with homework. The boys share household chores (shopping, cooking, washing, drying and cleaning) and help Remis at his office. The boys have learned several office skills and enjoy delivering documents around town. The boys earn their weekly allowance. The boys engage in numerous family activities with Remis. Each Sunday the boys speak with Grandma Remis. She is their only grandparent. Attached hereto as Exhibit "A" is a copy of a photograph taken of Grandma Remis, John, Andreas and Remis taken at Christmas 2005 in New York. John has taken up the guitar and enjoys playing to Grandma while Andreas sings along with him. The boys attend social and cultural events with Remis, including plays, concerts, movies and festivals. Attached hereto as Exhibit "B" is a true and correct copy of a picture of John and Andreas at the Hale Koa Hotel enjoying Octoberfest. They often visit with their "Hanai uncle", Paul Deering and his wife Nicole. Uncle Paul also plays the guitar and encourages John to play and sing along with him at his house. John has entertained at many a social gathering. The boys also enjoy community projects like fund raising and clean-ups. They especially enjoy singing Christmas carols at the Hale Ho Aloha, bringing tears of joy to many of the nursing home residents. John and Andreas respect and love their father and feel safe with him and enjoy becoming adults under his tutelage.

6. Gaudin has not spoken to either John or Andreas for almost six years. It was January 2001 that Gaudin last telephoned the boys. The only communications Gaudin has had with John and Andreas in the past six years has been the sending of religious

pamphlets with a small post-it note. Annexed hereto as Exhibit "D" are true and correct copies of said pamphlets and post-it note. Gaudin has never written a letter to John and Andreas, has not sent them a birthday card or holiday greeting, and has not sent them a present on any occasion. There is no relationship between Gaudin and the boys. Gaudin has demonstrated she is incapable of fulfilling the needs of John and Andreas during their adolescence. John and Andreas strenuously object to their return, together or separately, to Gaudin under any circumstance.

7. Gaudin and her husband/attorney Paul Lynch, Esq., have lived in Kailua, Hawaii since 2001. Neither has made any attempts to establish any relationship with John or Andreas. Gaudin has stated to this Court that she moved to Hawaii to be close to the boys during the pendency of this litigation. The facts of this case belie Gaudin's stated intent. Gaudin's husband/attorney, Paul A. Lynch, has represented to Judge Leslie E. Kobayashi that Gaudin considers herself the "victim" in this litigation.

8. The clear and convincing psychological abuse of John and Andreas by Gaudin required them to undergone psychotherapy with Pamela Merez, Ph.D. John attended 16 therapy sessions with Dr. Merez between January 5, 2001 and January 24, 2002. Andreas attended 17 therapy sessions with Dr. Merez until their discharge from therapy on January 24, 2002. Upon information and belief, Gaudin, although authorized by me to meet with Dr. Merez to discuss the children's care, refused to do so unless her attorney/husband was also present and given access to their records. When Dr. Merez would not permit such, Gaudin left her office.

9. John, age 16, objects unequivocally to his return to Canada and absolutely to Gaudin. He firmly believes Andreas should also absolutely stay in Hawaii with Remis

and not be returned to Canada or Gaudin. John and Andreas recognizes, respect and appreciate Remis' efforts devoted to protect them from Gaudin's hatred and controlling ways. John feels living with his mother was like being in a concentration camp. He and Andreas recall clearly that they were living against their will in Canada in an unloving, isolated, and antisocial atmosphere imposed by Gaudin. A return to Gaudin would be unbearable because they would be virtual prisoners. John recalls in fear that Gaudin did not let him and Andreas do anything that she did not think was "righteous". Returning to Gaudin would mean total isolation and a return to non-stop Bible study which is Gaudin's top priority. Gaudin has testified she wants to make the children into "good Christian soldiers". John fears his mother because she does not acknowledge him or Andreas as individuals. John also states that it would be unthinkable to return Andreas to Canada and be without his brother. That would leave John very sad for his brother and angry at Gaudin. John believes Andreas would run away rather than be subjected to Gaudin's religious fanaticism and her hatred of Remis. John doesn't want Andreas to be with Gaudin who hates Remis, the father Andreas loves. John is angry that Gaudin has made no attempts to have a relationship with them in more than five years but wants to take them back to Canada. John recalls clearly that his mother never even looked at him when he appeared in this Court in December 2000 with his Guardian Ad Litem for the first hearing in this matter. Although afraid at the time, John was deeply hurt that Gaudin rejected the GAL's offer to visit with him and Andreas in court . John believes Gaudin's conduct in the past five years shows she has not changed. As close as John and Andreas are, they would suffer tremendously if now separated. John clearly understands the

current circumstances and his statements are mature opinions based on what he and Andreas have experienced living with Gaudin.

    10. Andreas was seen by Dr. Merez on October 12, 2006. Dr. Merez is of the opinion that Andreas would be subjected to a grave risk of psychological harm if he were returned to Canada. Dr. Merez has professionally confirmed to Remis that Andreas has a very close bond with John and Remis. John and Andreas have been dependent upon each other in coping with the various problems they experienced with Gaudin while living in Canada. Andreas has told Dr. Merez he strenuously objects to being taken away from Remis and John. He has no wish to be returned to his mother no matter where she may be. Andreas feels Gaudin is a stranger to him and he fears being subjected to her total control and 'imprisonment.' This feeling is reinforced with Gaudin's most recent communications being limited to religious booklets. Andreas is sad Gaudin has never asked him how he feels. He does not believe she cares in anyway about him or John. Andreas recalls how he and John were abused by Gaudin and retains anger against her. John. Andreas was very disturbed to see John cry, have chest pains, difficulty breathing, sit and rock back and forth because he could not stand the pressure of all the Bible work. Andreas deeply resents the bad statements his mother has made about Remis, repeatedly calling Remis the devil or a friend of Satan. Andreas has also heard Paul Lynch, Esq., his 'step-father', argue in court and speak very negatively about Remis. Although Andreas states he misses having a mother, he does not miss Gaudin.

    11. Andreas is a very sociable young man, well-liked, a good student and athlete. Andreas completely enjoys playing football and the camaraderie of his teammates and friends. He has adjusted well to high school and his expanding social network. As

Gaudin has maintained she intends to home school the boys, this creates a greater fear in Andreas. He envisions not being able to have any friends or do what he loves the most, play football. Dr. Merez believes the totality of circumstances, if Andreas were returned to Canada, would serious affect his mental health and present a grave risk of psychological harm. The return of Andreas to Gaudin and Paul Lynch, Esq., a total stranger, would place him in an intolerable situation. Dr. Merez does not believe any alternative remedial solution is appropriate. Dr. Merez finds Andreas, at 14, to be of sufficient age and maturity to state his objection to being returned to Gaudin. Andreas understands the circumstances of this case and chooses to remain with Remis and John in Hawaii. Dr. Merez supports Andreas' choice.

12. Paul D. Deering, Ph.D. is a professor of education at the University of Hawaii and has known John and Andreas since late June 2000 and Remis since about 1997. Dr. Deering is an expert in the field of education and in particular, early adolescence. Dr. Deering well notes children's needs for their normal growth and development: social, intellectual, emotional, and physical. Most of the education and learning process involve socialization. This is particularly so as a child reaches 10 to 15 years in age and start testing their independence. This process continues through their adolescent years. They need opportunities to associate with various groups to find their own identity. Children need outside contacts, other adults, and peer challenges to learn to think for themselves in making choices.

Dr. Deering has seen John and Andreas do very well in adjusting to life in Hawaii and extending themselves in all areas needed for transition to adulthood. John is well adjusted and continues to learn, socialize, and experiment, in becoming a productive

individual. Andreas is in adolescence and very much involved in development need for socialization at school and at home. Gaudin's steadfast intent to mold the children into good Christians by isolation, including home-schooling, would deprive Andreas of his much needed socialization and other stimuli necessary for all aspects of his development and well being. Home-schooling alone would be a traumatic change in Andreas' life and disruptive of his present development.

13. Dr. Deering notes the minimum physical needs of a child include food, shelter, clothing, education, supervision, protection and health care. Emotional needs of a child must also be met. A child needs parental support to fulfill dependency needs, foster independence, instill a sense of responsibility, and promote self-esteem. Additionally, a child needs the opportunity for social relationships, friendships, and a sense of community. The manner in which Gaudin has controlled the children, coupled with her failure to comply with the orders of the Hawaii Family Court as well as her continued biblical communications to John and Andreas suggest a return to such a stark environment would be emotionally devastating to the boys, especially Andreas. That Gaudin has not spoken to either John or Andreas in about 6 years is in itself emotionally draining. For Gaudin to now remove Andreas to Canada without knowing who he is as a young adult would be inconsistent with his growth and maturity. The boys emotional and other fundamental needs are well served by Remis who encourages independence, affords them a sense of responsibility and fosters participation in their community.

14. Gaudin does not meet the emotional or other needs of the children and is indifferent and/or unable understand or accept them as individuals. Her choice to remain absent from the boys' lives in the past 6 years supports her apparent indifference or

inability to parent them. The boys see Gaudin as a stranger with a very disturbing past. Gaudin's husband, Paul Lynch, is a total and fearful stranger to the boys whose representation of Gaudin in pursuit of breaking up their family and well-settled life is completely disturbing to John and Andreas.

      15. Gaudin's past with the children supports a finding that the return of either child would expose each to a grave risk of psychological harm and/or place each in an intolerable situation. The past remains the present in the context of Gaudin's biblical communications. When the boys were 8 and 9, Gaudin isolated the boys from any social relationships except those available at her particular church on Sundays. The boys reported they had no friends in Canada; Gaudin did not permit them to eat lunch with their peers, limited visits to their home by a schoolmate on condition that they would study the Bible and then be allowed to play. Gaudin did not enroll them in any extracurricular activity at their school. Gaudin did not allow any other activities outside of her church. The boys reported they could not visit classmate's homes, not permitted to go to parties, did not go anywhere or do anything except study the Bible, play at home and go to church. Gaudin did not participate in any parent-teacher conferences or other social events at school. Gaudin kept the boys home from school at times or caused them to arrive late due to her imposed Bible study. Gaudin gave the boys no sense of community. Right now, Gaudin has no community in Canada to go to. Yet, Gaudin stubbornly persists that she will move from Hawaii and return to an unknown destination in Canada. In taking this stand, Gaudin patently ignores any consideration of what affect this would have on John and Andreas. Gaudin's motive to continue this case is founded not in the boys' interest but in her hatred for Remis. The very restricted

contacts/activities and limited studies do not provide for the boys' intellectual curiosity or any other needs. John and Andreas are of an age where continued socialization and activities are critical to their growth and development.

16. There is no relationship between Gaudin and her husband with the children. In contrast, John and Andreas express much love, affection and respect for Remis. Remis fulfills the social, intellectual, emotional, and physical of Andreas and John. Andreas is old enough and mature enough to object to his return. It would be seriously harmful to his further development into adulthood if his objection were not honored.

17. Remis is the sole supporter of the children, an attorney licensed in the State of Hawaii and a sole practitioner with an office in Honolulu. It would be an extreme hardship to move to Canada to stay with Andreas and leave John in Honolulu alone to care for himself. It would also be an extreme financial burden to leave his practice, the sole source of income, and continue to support the children in two locales. Such would defy common sense and place a loving and happy family in a circumstance of separation, unhappiness and financial hardship. Gaudin neither sees, understands nor cares about any consequence which the boys will suffer in her blind pursuit of having the boys returned to her.

18. Attached hereto as Exhibit "C" is a true and correct copy of a picture showing John's loving smile admiring Andreas on October 1, 2006. A picture is truly worth a thousand words in demonstrating John's love for Andreas.

19. Gaudin's petition should be dismissed as to John as he is now over 16 and Article 4 of The Convention precludes its application to him. Andreas would be placed in an intolerable situation and be at a grave risk of psychological harm if he were

returned to his uncaring mother. Having lived in Honolulu, Hawaii since June 2000, having gone to elementary school, middle school and now high school, Andreas has developed many friendships and is well-settled in Hawaii. This fact should be given weight, along with his objection to being removed as part of the grave risk analysis.

Andreas is 14 and of sufficient age and degree of maturity to express his reasoned objection to his return to Gaudin. Such objection must be honored independently of any grave risk/intolerable situation finding. Gaudin's petition must be denied.

FURTHER DECLARANT SAYETH NAUGHT.

DATED: Honolulu, Hawaii, October 17, 2006.

_____
JOHN R. REMIS, JR.