ORIGINAL

LYNCH ICHIDA THOMPSON KIM & HIROTA
A Law Corporation

PAUL A. LYNCH 661-0
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Telephone: 528-0100

Attorney for Petitioner

UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| CATHERINE JANE VON KENNEL GAUDIN, nka LYNCH, | ) CIVIL NO. 00-0765 SPK (LEK) ) ) PETITIONER'S TRIAL BRIEF; |
| Petitioner, | ) CERTIFICATE OF SERVICE ) |
| vs. | ) ) Hearing: November 28, 2006 |
| JOHN R. REMIS, JR., | ) Time:    10:00 a.m. ) Judge:   Honorable Samuel P. King |
| Respondent. | ) ) |

PETITIONER'S TRIAL BRIEF

PREFACE

Counsel for Petitioner, the only lawyer or paralegal involved in this case for Petitioner, had prepared written material to be the Trial Brief herein. Citations and any cross-reference was to be done after drafting was complete, probably Monday afternoon and Tuesday morning, November 21, 2006. By mechanism and in a manner not yet known, in attempting to print copies of work product, which were not successful, and attempting to send a copy to counsel's secretary on Sunday evening, the material disappeared. Efforts by computer technicians on Monday, November 20, 2006, were unavailing. The result is that the following work product has citations to authority and/or source in a broader and more general fashion than is the usual and normal

case. However, all references are to authorities in memoranda or documents previously filed herein, in the Ninth Circuit Judgment whose mandate therein is the source of the scheduled hearing, or relates to the Declaration of Paul A. Lynch. Counsel apologizes to the Court and Counsel but could see no other way to resolve this situation.

I.   INTRODUCTION

A.   History and Background

This case was originally filed by the Petition of Petitioner for declaration of her rights under the Hague Convention and the federal ICARA legislation passed by Congress to implement it (42 U.S.C. 1600 et seq., hereinafter "ICARA"). The background was that Petitioner had lived with her children in the province of Quebec in Canada for 7 years from January of 1994 until they left for a summer visit with their father in Hawaii in 2000.

There was pending at the time of the filing of the Petition under the Hague Convention in this Court on November 22, 2000, a proceeding in State Family Court initiated by the father of the two children, Respondent herein. In that proceeding, the Respondent had obtained an *ex parte* temporary restraining order that was extended upon his presentation at a hearing on August 31, 2000, as to its potential continuance, of an affidavit of a psychologist in the State of Hawaii who opined under oath that there would be substantial damage to the mental health of the children if they were returned to their mother in Quebec. This affidavit was tendered in opposition to a motion filed by Petitioner's attorneys to the court to have it "decline" jurisdiction under the provisions of the UCCJA, as to which the State judge had indicated verbally that he was probably going to grant that motion for the Court to decline jurisdiction because of the

provisions of that statute. Over proper objection, the Judge erroneously received the affidavit as evidence without the presence of the psychologist for purposes of cross-examination and, based upon that affidavit, changed his mind about declining jurisdiction and set a trial for hearing in December.

Petitioner subsequently learned of the existence of the Hague Convention and its remedies and filed a Petition for a declaration of her rights and then proceeded to inform the State Court judge of that and to back off from the State Court proceedings until she could get a determination of her rights under the Convention, this being a facet of the Hague Convention endorsed by the International Treaty and the signatories to the Hague by way of a declaration that the Hague was adopted by a country as the "law of the land", binding all courts therein with potential jurisdiction and/or interest and requesting that all courts involved with the parties in the jurisdiction, including non-Hague courts, cooperate, allow, and assist as to the determination of a Petitioner's rights under the Hague Convention by the court that is handling the Hague question. See Article 16, 19 I.L.M. 1501; (1980).

There was a letter sent by the U.S. State Department to the State Judge as the federal agency responsible for implementing the Hague Convention and the ICARA law and assisting people in obtaining their rights under it and requesting his cooperation in holding off state proceedings and allowing the federal proceedings to go to completion.

At the time of the filing of the petition, the Petitioner requested the United States District Court Judge to issue a stay order staying the state scheduled trial until such time as the federal proceedings were complete. The judge declined to do so, scheduled the hearing for December 8, 2000 in the face of a December 12, 2000 scheduled trial in state court, held the hearing on the

morning of December 8 and issued a decision in the late morning of Monday, December 11, 2000, erroneously denying the return of the two children of the parties to Quebec under the provisions of the Hague Convention.

As the Court knows, the sole purpose of the Hague Convention is to provide that any proceedings relative to a change in the pre-existing orders of custody with respect to minor children take place in the habitual place of residence of the children which in this case was Hudson, Quebec, Canada. In addition, on November 23, 2000, a Canadian court had determined through two separate decisions that (a) the provisions of the paternity decree involving Petitioner and Respondent dated July, 1994, was valid and enforceable in the province of Quebec, Canada; (b) Petitioner had rights of custody that were violated by the actions of Respondent in wrongfully retaining the children in Hawaii instead of returning them to her in Canada; and (c) such retention was in fact and law wrongful. The only purpose of the Hague Convention as stated above was to have any legal proceedings as to change of custody or in custodial rights take place in the jurisdiction which was the habitual residence of the children and not to have that right itself usurped by the wrongful action by any parent in either wrongfully retaining or abducting their child(ren) for purposes of "hometown" advantage, economic advantage, trial advantage (inasmuch as the non-abducting parent's witnesses, evidence and testimony would all be from people at the place of habitual residence), or any other reason.

Counsel for Petitioner stipulated that the U.S. District Court could look at the face of proferred documentation and, without more, make the preliminary determination, called for by the law by clear and convincing evidence, as to whether a defense that was asserted by the Respondent under Article 13 of the Convention, to the effect that there was a grave risk of

4

psychological or physical harm to the children if they were returned to their mother in Quebec, appeared to be present. This counsel did that for the simple reason that he knew, and so informed the Judge, that at that point in time (and insofar as he knows, up to today) there was no decision in the United States, or in the Hague Convention "world", that "grave risk of psychological harm" of itself was sufficient in any reported case to have a court rule that the child(ren) did not have to be returned to their habitual place of residence for any custodial proceedings, unless there had also been present, as an adjunct to and part of that finding, sexual and/or physical harm. Since that was not present in this case, counsel invited the Judge to make the required determination on the "face" of the material for the reason that, even if the judge found that there was a grave risk of psychological harm, nonetheless the court would, unless it were literally impossible, be required to make an "undertaking", which under the case law, would be defined as any remedial measure that would reduce the risk so as to have the child(ren) return to their habitual place of residence. See *Gaudin v. Remis*, 415 F.3d 1028, 1037 (CCA 9 2005) (Gaudin III). This would accomplish the sole goal and aim of the Hague Convention, the evil to be avoided being sufficient to generate this international treaty and cause the passage by the United States Congress of legislation implementing it.

In making this decision, Judge King, as Judge Bryant in the Hawaii Family Court before him, put great weight on the provisions of the affidavit supplied. Counsel for Petitioner believed at the time that the affidavit of the psychologist that was used by Respondent and cited by the State Family Court Judge and used and cited by the United States District Court judge hearing this case, is the primary reason for finding the existence of a grave risk of psychological harm duty, believing that the contents of the affidavit were truly the opinion of the professional. It

should also be kept in mind that this person is the person as to whom the Respondent called the Petitioner on or before August 4, 2000, the day before the boys were due to be returned to their mother in Quebec and informed her that he had a temporary restraining order and that he just spoke to the "top" psychologist in the State of Hawaii and that Petitioner would have to come to do battle "on my turf". See Exhibit 1, the Rule 60(b) Motion. This, of course, is the same person who started this entire matter by making a phone call and sending e-mails to Petitioner objecting to her proposal to home school the boys. He wasn't looking for more visitation. He was not looking for a change in custody. He merely wanted her to promise to give up her notion of home schooling the boys, not only for that Fall but for all time, even though he subsequently testified in the Family Court proceeding that he did not know anything about home schooling. See Rule 60(b) Motion.

In this Court's decision on December 11, 2000, the Court correctly found that the Petitioner was a proper Petitioner, that all the jurisdictional requirements of the Hague Convention had been met, established that Quebec was the habitual place of residence for the children, that she had proper custodial rights of the children and had had them since at least the time of the stipulated Decree of July, 1994, which included an agreement by the Respondent that Petitioner could move with the children to Canada and the province of Quebec; found that Respondent had wrongfully retained the children in Hawaii. The Court also found, with respect to an Article 13(b) defense, and with Petitioner's counsel's stipulation above described, by clear and convincing evidence, that there was a grave risk of psychological harm. At that point, the District Court stated he had discretionary authority to select the forum which would be the best place for the custody proceedings to take place, and he selected Hawaii.

For his conclusions, the Court apparently relied on the affidavit hereinabove cited for both the finding of grave risk of psychological harm and the selection of Hawaii as an appropriate forum for the child custody proceedings. Or as the Ninth Circuit Court of Appeals noted in Gaudin III, "Remis submitted several pieces of evidence in support of his argument to the district court. Chief among them were the declaration of a clinical psychologist who examined the children, a letter from the same psychologist written after further examination, and a report from a guardian ad litem appointed by the Hawaii Family Court".

The result was that Petitioner in deciding not to let the child proceedings go by default in the State of Hawaii had to retain new counsel in less than 24 hours. The Family Court refused a request for continuance (notwithstanding it took the case under advisement for three months). There followed a 4-day truncated trial over a period of 8 days in the Family Court. It was obvious during that proceeding and after it that the court was not happy with Petitioner for having done what she did. It was also obvious that Hawaii Family Court, supposedly knowledgeable about the Hague Convention, attempted to take the Hague question "over", even though it had already been reposited in the Hawaii Federal Court.

The most significant thing that happened in the Family Court trial was the disavowal by the "psychologist" affiant of the affidavit that was relied upon by so many people to establish "grave risk of psychological harm". That is, the psychologist testified a) that she had not expressed any "opinion" whatsoever; b) that she had not in any way, or could not or would not in any way, express an opinion as to custody; c) that such would be in violation of the canons of ethics of the American Psychological Association as she had not so much as spoken to Petitioner; d) that she had informed Mr. Remis when he asked for her assistance that she could <u>not</u> express

7

an opinion as to custody and that she would not testify in any proceeding, or as she put it, "I told him at least five times" that she would not testify; e) that she never said or thought that the boys could not return home to their mother, and that in fact, they could have done so so far as she was concerned, with the addition that she probably would have recommended therapy "and would have done so probably by letter". (Emphasis added.) Furthermore, the guardian ad litem's report and opinion was totally predicated on this psychologist affidavit and non-opinion. See Rule 60(b) Motion, Sections on Psychologist and Guardian Ad Litem.

Notwithstanding anything else that may or may not have happened in the Hawaii Family Court proceeding or may or could have happened if there had been a child custody proceeding taking place in Quebec, Canada, and because neither one of those events has anything to do with what the Hague Convention Court must determine and has to take into account, there is to be no examination on the merits of the custodial contentions (And yet this case from day one right up until the Declarations filed on behalf of Respondent and his Proposed Findings of Fact and Conclusions of Law in connection with this hearing to be held on November 28, 2006, has been replete with character assassination by Respondent, a lawyer who apparently engages in "psychological projection" by accusing somebody else of doing the very actions he is performing currently).

Therefore, notwithstanding the psychologist's disavowal of her affidavit in testimony, there was a final judgment in the state court in September of 2001. Subsequently, the undersigned filed a Motion for the United States District Court for the District of Hawaii to "Entertain" a Rule 60(b) Motion filed simultaneously, being the ICARA procedural mechanism existing only in the Ninth Circuit in the United States of America relative to an attempt to file a

Rule 60(b) motion while an appeal is pending. This Court declined to "Entertain" such a Rule 60(b) Motion by denyign the Motion to Entertain. On July 18, 2005, after four years, followed by final judgment of the Ninth Circuit on August 22, 2005, this case is before the Court on remand, the appellate court concluding that the District Court had acted erroneously in his decision of December 11, 2000.

II.   *GAUDIN III* AND THE PROCEEDINGS ON REMAND

An important point to all this is that if the United States District Court had known on December 8, 2000, what is now known about the evidence in support of Respondent's position (see Rule 60(b) Motion with citations and authorities), there would be no doubt whatsoever that the Court would have found it not only very simple to make a so-called "undertaking" which the Ninth Circuit pointed out was mandatory, but that in fact it probably would not have found a grave risk of psychological harm in the first instance due to the fraud upon the Court of the overstated and overblown affidavit and the related dependent GAL's report. However, that was not before the Court then. The issue of "grave risk" now related to circumstances then is ostensibly not before the Court because of the Ninth Circuit's mandate. *Gaudin III* at 1036. The Ninth Circuit has determined that the issue that is left is not to determine what the undertaking should be relative to the grave risk of psychological harm still assumed by it to have existed in the year 2000. It should be noted that that assumption is alluded to, referred to, and relied upon by counsel for Respondent even today, notwithstanding her presence during all of the referenced proceedings.

Nonetheless, counsel for Petitioner asserts the relevance now of December, 2000 circumstances, the December 8, 2000, hearing in the U.S. District Court and its December 11,

9

2000, Decision and Order because it is highly relevant to dispel the assumed existence of "grave risk" then, casts even greater doubt on the existence <u>now</u> of a grave risk of psychological harm, which doubt was great in any event because of Petitioner's and the children's non-contact with each other (except for children telephone hangups on their mother at the beginning of this period); adds a cognizable dimension to the wrongful retention by Respondent of the children, in fact is a separate, more deliberate, and intentionally deceptive, even fraudulent act, WHICH SPEAKS FOR ITSELF in terms of the degree of wrongful conduct; and therefore is relevant to, an bears on, the conclusion that Petitioner has been deliberately deprived of her rights. See Rule 60(b) Motion and Exhibits.

Even if one were to conclude <u>some</u> grave risk of psychological harm, although under case law and the facts of this case, THEN and NOW, Counsel cannot see how, nonetheless, the making of an "undertakings" is not easy, and simple. Since this Court is NOT to assess the substantive merits of "custody", is NOT (the Ninth Circuit emphasized this point many times) to take into account <u>in any fashion whatsoever</u> anything the Hawaii State Courts did relative to this situation, the younger child, Andreas, should be returned to Quebec. The Hague remedy was and is simple and was supposed to be fast. The delays associated with unmeritorious positions being taken by Respondent, Court delays, an apparent if not inadvertent ignoring of a Ninth Circuit Mandate relative to the older child's turning sixteen in September of 2006, such that a hearing was scheduled after thirteen months from the mandate decision, AFTER he turned sixteen, positions taken in declarations factually that relate to events now six or more years ago, for children who were then 7 and 9 years old, the apparent parental alienation by Respondent, etc., all yielding the conclusion of an "age and maturity" that is not such as to be entitled to much

weight. See Declarations of Respondent and Andreas Remis.

Lastly, if the situation were as Respondent says, and if the U.S. District Court correctly apprehended the law relative to his discretion and undertakings, then obviously the boys should have been sent back by decision dated December 11, 2000, and if Respondent chose, he could have initiated a custody proceeding in Quebec, it would have been decided in his favor, Petitioner's rights under the law would have been observed, and none of this litigation would have been necessary.

It should also be pointed out that any period of time Andreas would spend in Quebec for a custody proceeding would be comparatively short, so the "risk" would be short-lived. Of course, given that neither he nor his father complained about anything to Petitioner except Respondent's objection to "home schooling", it is difficult to apprehend any real risk at all. See *Gaudin III* at 1037. ". . .[T]he grave-risk inquiry should be concerned only with the degree of harm that could occur in the immediate future. Because psychological harm is often cumulative, especially in the absence of physical abuse or extreme maltreatment, even a living situation capable of causing grave psychological harm over the full course of a child's development is not *necessarily* likely to do so during the period necessary to obtain a custody determination."

Again, it should be obvious by now that Petitioner's Petition should have been granted and the children should have been sent back to Quebec in December, 2000, or assuming the Rule 60(b) Motion had been determined in February 2002, or the appeal determined on its merits in 2002.

Instead after taking into account the disavowal of the psychologist's affidavit, this Court must conclude that the children should have been sent back, either outright, or with a simple

undertaking. It should be remembered then that Petitioner already has won her Hague Convention/ICARA suit, the effect of any other non-Hague proceedings should be vacated and superseded, Petitioner is entitled to her costs and fees (to be subsequently determined as to eligibility and amount).

Thus, the place of substantive custodial proceedings has not been determined as of yet. Petitioner objects strenuously to the notion that the Court would find "sufficient age and maturity" in Andreas to accord "weight" to his views, given the attendant circumstances.

Petitioner is entitled to have her proper day in court after the Hague Petition is correctly determined. As the *Gaudin III* Court said, "[w]hile the district court has the authority to vacate state custody orders if necessary, *see Mozes,* 239 F.3d at 1085 n.55, it may do so only to ensure that the Convention's purposes are not frustrated." The Convention's purposes would be frustrated if the wrongful conduct in this case has no consequences, notwithstanding the meritoriousness of Petitioner's case, and in fact such wrongful conduct is rewarded by a "home-town" decision, with no regard to Petitioner's rights.

DATED:   Honolulu, Hawaii, November 21, 2006.

_____
PAUL A. LYNCH
Attorney for Petitioner

UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| CATHERINE JANE<br>VON KENNEL GAUDIN, nka LYNCH,<br><br>        Petitioner,<br><br>vs.<br><br>JOHN R. REMIS, JR.,<br><br>        Respondent. | ) CIVIL NO. 00-0765 SPK (LEK)<br>)<br>) CERTIFICATE OF SERVICE<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was duly served upon the following by hand delivering a copy of same, on this date, addressed as follows:

CHUNMAY CHANG, ESQ.
737 Bishop Street, Suite 2100
Honolulu, Hawaii 96813

DATED:   Honolulu, Hawaii, November 21, 2006.

_____
PAUL A. LYNCH
Attorney for Petitioner