# ETHICS FOR PSYCHOLOGISTS
## A Commentary on the APA Ethics Code

Mathilda B. Canter
Bruce E. Bennett
Stanley E. Jones
Thomas F. Nagy

*American Psychological Association • Washington, DC*

EXHIBIT C6

Copyright © 1994 by the American Psychological Association. All rights reserved. Except as permitted under the United States Copyright Act of 1976, no part of this publication may be reproduced or distributed in any form or by any means, or stored in a database or retrieval system, without the prior written permission of the publisher.

First printing December 1994
Second printing September 1995
Third printing January 1996

Published by
American Psychological Association
750 First Street, NE
Washington, DC 20002

Copies may be ordered from
APA Order Department
P.O. Box 2710
Hyattsville, MD 20784

In the United Kingdom and Europe, copies may be ordered from
American Psychological Association
3 Henrietta Street
Covent Garden
London WC2E 8LU
England

Typeset in Century by Easton Publishing Services, Inc., Easton, MD

Printer: Data Reproductions Corporation, Rochester Hills, MI
Cover designer: Berg Design, Albany, NY
Technical/production editor: Valerie Montenegro

**Library of Congress Cataloging-in-Publication Data**
Ethics for psychologists : a commentary on the APA ethics code / Mathilda B. Canter
  ... [et al.].
    p.   cm.
  Includes bibliographical references and index.
  ISBN 1-55798-259-7 (acid-free paper)
  1. Psychologists—Professional ethics.  2. American Psychological Association—By-laws. I. Canter, Mathilda B.
BF76.4E82  1994
174'.915—dc20                                                                 94-36224
                                                                                  CIP

**British Library Cataloguing-in-Publication Data**
A CIP record is available from the British Library.

*Printed in the United States of America*

# Chapter 9

# Forensic Activities

This section of the Ethics Code is not just for the use of "forensic psychologists"; it is for all psychologists when they are performing forensic or potentially forensically relevant functions. It is a "first," for no prior APA code has specifically addressed forensic activities. Its inclusion may well reflect and be a response to the increasingly litigious character of our culture, as it was developed out of recognition of the fact that although some psychologists routinely provide services in forensic settings, many others may unexpectedly find themselves subpoenaed to produce records, having to submit to depositions, or being required to testify in court regarding a current or former student, client, or patient. This section therefore applies to the work activities of all psychologists, including academic, research, industrial/organizational, and school psychologists as well as those in the health care arena.

The forensic arena is in some respects quite different from other arenas within which most psychologists are accustomed to functioning. Significant differences include the adversarial nature of legal and judicial activity and the pressures on the psychologist to assume advocacy positions. The standards in this section are designed to provide guidance to psychologists in such circumstances.

A common confusion for those who are not forensic psychologists seems to involve making distinctions among types of witnesses. Psychologists may simply be "fact witnesses" just like any other citizens. When a psychologist testifies to what a patient told him or her about the pain caused by an auto accident, he or she may be functioning no differently from the patient's coworker who testifies to the same point. But psychologists may *also* be called as expert witnesses. According to *Black's Law Dictionary*, an expert witness is defined as "one who by reason of education or specialized experience possesses superior knowledge respecting a subject about which persons having no particular training are incapable of forming an accurate opinion or deducing correct conclusions" (Nolan & Nolan-Haley, 1990, p. 578). Thus, as an expert, a psychologist may be asked, "In your professional judgment, was the patient's recovery such that a conversion reaction or factitious disorder may be indicated?" It should be emphasized that psychologists who render expert testimony in court are not "just giving opinions," they are providing expert opinions based on professional knowledge, skill, and techniques. Their opinions have much weight and can have great effects on the lives of the individuals concerned (see also Standard 1.15). A psychologist may be subpoenaed as an expert or as a fact witness, or may be asked questions of both types during the same testimony. However, there are times when, because of the particular roles a

psychologist may be involved in, he or she may choose to not testify as an expert in a particular case or may confine testimony to "facts" and refrain from making judgments or extrapolating from data.

### 7. Forensic Activities

### 7.01 Professionalism

**Psychologists who perform forensic functions, such as assessments, interviews, consultations, reports, or expert testimony, must comply with all other provisions of this Ethics Code to the extent that they apply to such activities. In addition, psychologists base their forensic work on appropriate knowledge of and competence in the areas underlying such work, including specialized knowledge concerning special populations. (See also Standards 1.06, Basis for Scientific and Professional Judgments; 1.08, Human Differences; 1.15, Misuse of Psychologists' Influence; and 1.23, Documentation of Professional and Scientific Work.)**

Because this is such a specialized area, and because the forensic work of psychologists has the potential for affecting people's lives in such extremely significant ways, this standard calls to the psychologist's attention that compliance is required with other sections of the Ethics Code that relate to their forensic functions. Strict adherence to the Ethics Code decreases the likelihood of avoidable harm to the parties involved (see Standard 1.14). For example, psychologists involved in forensic situations need to know whether it is appropriate to withhold reports pending payment in full for services provided. (see Standard 5.11). They need to be aware that an incompetently performed custody evaluation and attendant testimony could lead to an individual's inappropriate loss of his or her children. It is clearly, then, of the utmost importance that assessments and tests done for the court meet the applicable standards set in this section of the Ethics Code and that the requirements of all other related standards be met.

Attention is called to Standard 1.23b, regarding documentation of professional and scientific work, when it can be anticipated that records will be used in legal proceedings. Additionally, it might be noted that it is very wise to document in the records discussions of matters such as role clarification, revelations regarding prior relationships, and other requirements as raised in the Forensic section of this Ethics Code.

Essentially, professionalism in the forensic arena means practicing in the area of one's expertise and knowing the ground rules and the system (see also Standard 7.06). Psychologists must be informed and competent in the areas in which they provide services (as required in Standard 1.04). This includes having special knowledge concerning the basic populations that they are serving: The psychologist doing child custody evaluations must have appropriate training and knowledge of children and the effects on them of divorce, as well as knowledge of adults and parenting skills. The evaluator of an 80-year-old's need for a guardian needs to know about geriatric populations. Whether doing

an evaluation involving developmentally disabled individuals, chronic pain patients, criminal populations, and so forth, the psychologist needs to know the population and the problems in order to function competently in a forensic setting. In 1994, the APA Council of Representatives adopted as policy the *Guidelines for Child Custody Evaluations in Divorce Proceedings* developed by the Board of Professional Affairs. Although this document is not enforceable by the APA Ethics Committee, it does provide valuable information for psychologists involved in providing such services (APA, 1994).

Additionally, psychologists should have specialized knowledge concerning special populations such as victims of violence and underrepresented groups including ethnic minorities, persons with disabilities, and so on, for whom or about whom they provide services. They should be aware of the special vulnerability of some of those they serve and of the risks posed to victims of interpersonal violence by the disclosure of certain types of information, such as the address where a woman or man may be staying to avoid spousal or partner abuse (see also Standard 1.14).

When doing forensic work in any area, be it child custody, criminal responsibility and competency assessments, evaluation of damages in civil cases, civil commitment, guardianship and testamentary capacity, and so on, psychologists should have a reasonable degree of knowledge of the judicial system, the statutes that govern the particular area of law and relevant case law, the court rules that might apply to the presentation of evidence, and, in general, the sorts of legal procedures that might be applicable. It would also be useful to know how court procedures work and to learn courtroom etiquette. Psychologists do not need to know everything a lawyer knows. They do need to know enough about the judicial system so that they can do a competent job and avoid harm. (Mistrials have occurred as the result of forensic witnesses' inappropriate participation in evidentiary procedures.) Psychologists need to know how to handle a subpoena, how to deal with attorneys, how to conduct themselves in a deposition, and so forth.

For example, it is important to know that just because a psychologist's records are subpoenaed, that psychologist need not automatically turn over those records. There are times when the terms of even a court order should be questioned or challenged, and times when there is no problem in turning records over in response to a subpoena issued by a lawyer. If the psychologist identifies problems in providing the subpoenaed materials, then consultation with a lawyer, a forensic colleague, or the court can provide direction. Some action is required of the psychologist in response to any subpoena, although that action may be to seek to quash the subpoena or request a protective order from the court restricting the materials that must be produced or providing that they need not be produced in the absence of consent.

### 7.02 Forensic Assessments

(a) **Psychologists' forensic assessments, recommendations, and reports are based on information and techniques (including personal interviews of the individual, when appropriate) sufficient to provide appropriate substantiation for their find-**

148     ETHICS FOR PSYCHOLOGISTS

> ings. (See also Standards 1.03, Professional and Scientific Relationship; 1.23, Documentation of Professional and Scientific Work; 2.01, Evaluation, Diagnosis, and Interventions in Professional Context; and 2.05, Interpreting Assessment Results.)

In doing forensic work one needs to base one's assessments, recommendations, and reports on information and techniques that are appropriate and provide the data necessary to substantiate the findings. In some situations, personal interviews are not considered necessary, as when psychologists review records and provide reports, for example in the context of social security appeals. Such reports clearly indicate the nature of the review. And in some situations there are well-respected neuropsychologists who base their reports on test findings and standardized observations made by appropriately trained technicians.

This standard would not appear to preclude such procedures. By contrast, in doing custody evaluations, interviewing both parents is expected, with efforts made to arrange such meetings. Failure to interview a parent calls for explanation of why the interview could not be held, and that omission must be reflected in the report of and scope of findings. As discussed in the next section, a custody recommendation, for example, may not be possible in these circumstances. Although they may at times be pressured to do so, as by the parties or their lawyers, psychologists do not go beyond the data in presenting their conclusions and reports and explain any important limitations in the data.

> (b) Except as noted in (c), below, psychologists provide written or oral forensic reports or testimony of the psychological characteristics of an individual only after they have conducted an examination of the individual adequate to support their statements or conclusions.

Except as provided in Standard 7.02c, this section requires an in-person examination of the individual as part of the information gathering for the preparation of written or oral forensic reports or testifying regarding an individual's psychological characteristics. In line with this standard, then, a psychologist who had been consulted only by the wife and was called into court and asked questions regarding the husband clearly would not be able to make statements regarding the psychological characteristics of the husband. The psychologist would have to indicate that the husband had not been seen and qualify any responses within that context.

Certainly, there are times when a lawyer may request that a psychologist read transcripts, look at medical records, examine test results, pore over depositions, and so on, and render a professional opinion. For the psychologist to do so would not be in conflict with this standard as long as the nature of the question addressed is such that the available data would present a meaningful response and the opinion did not include a definitive statement about the

psychological characteristics of the specific individual. Statements about psychological characteristics of individuals not personally examined may not be made, in forensic situations, except as provided in 7.02c. Record reviews may also be appropriately used as the basis for responding to hypotheticals, for it is common in legal settings for statements about such data to be introduced in the form of hypothetical questions that do not relate to a specific individual. Although doing such record reviews is acceptable practice, the nature and limitations of the review must be indicated in the opinion or testimony rendered (see also 7.04b).

In applying this standard, clinical judgment is called for in order to determine what procedures constitute an adequate evaluation for particular diagnostic or evaluative statements or conclusions. Personal examination of an individual is only one possible aspect of the evaluation, although a mandatory one. Other sources of data might include, for example, testing, review of records, and contacts with school counselors; variables such as length and content of the interview, types of psychological tests conducted, and nature and extent of the history obtained all enter into determination of the adequacy of the evaluation. Psychologists are reminded that in a forensic setting their professional opinions may be sharply challenged, and they will need to provide ample justification for their conclusions.

> **(c) When, despite reasonable efforts, such an examination is not feasible, psychologists clarify the impact of their limited information on the reliability and validity of their reports and testimony, and they appropriately limit the nature and extent of their conclusions or recommendations.**

This section provides guidance in situations when, despite reasonable efforts, the psychologist may be unable to do the personal examination addressed in 7.02b. It addresses three considerations.

First, it requires that "reasonable efforts" have been made to do the examination of the individual and these have not been successful. There might be a situation in which an individual is physically incapacitated to an extent that examination is not considered feasible or the individual might be out of the country, in jail, and so on. Asking a husband to have the wife he is in the process of divorcing come in for an evaluation, and simply accepting his statement that she will not, might not appear to be a "reasonable effort." Nor might be offering a busy working person one appointment time and not offering another when told he or she cannot make it. Determining that enough steps have been taken involves assessing not only what the steps are, but whether the examination is "not feasible." One might consider calling or writing to arrange an appointment, offering alternative appointments, or working with the court or attorneys to ensure as much cooperation and understanding as possible, as reasonable efforts made. And if the examination could still not be arranged, it might then be considered as "not feasible."

Second, when the evaluations have proceeded, the data are considered to be "limited," and the psychologist, in reports and testimony, must explain how

the limited evaluation affects the reliability and validity of the "reports and testimony." In other words, the qualification requirement extends to both statements of fact, which report the "data," and statements of impact, which extend to the findings and opinions as well. It is important to note that this qualification is not only regarding the "data," but extends to the findings and opinions as well. The psychologist who states "I did not see the father" is making a statement about the limitation of the procedures, but that statement does not indicate how the fact that the father was not seen qualified the conclusions drawn. This is in contrast to the psychologist who states "the validity of my opinion regarding the likely adjustment of these children is reduced by my not having evaluated the father and not obtaining his descriptions of the children's behavior" and is thereby addressing the impact of the procedure limitation on the opinions rendered, thus qualifying a finding consistent with this standard.

Third, this rule requires that when the personal examination has not occurred, the psychologist refrains from drawing conclusions and making recommendations that go beyond the limits of the data. This is, of course, required by other standards also, but is emphasized here because it is in an area fraught with problems. In other words, even if psychologists follow the stipulations, clarify that the impact of the information is limited, and limit the nature and extent of their conclusions or recommendations accordingly, there are some types of conclusions and recommendations that are precluded. Under this standard, in a child custody case in which only one parent was evaluated and it was not feasible to evaluate the other, although the psychologist may make statements about the parent who was not seen as long as he or she does not go beyond the data and does qualify conclusions by acknowledging the limitations imposed by the incompleteness of the data collected, it would generally be improper for the psychologist to offer an opinion of the missing parent's parental qualities or make a custody recommendation. If the psychologist does not evaluate a father in a custody matter but evaluates the rest of the family, whatever evidence he or she may have about the father may be presented, along with the relevant opinions. For example, if the custody matter involves a child diagnosed as having an attention deficit disorder, and the data clearly indicate that the father is a very impatient individual with two founded abuse allegations, the psychologist may use this information in the evaluation. If information ordinarily needed to render certain opinions has not been obtained, and if techniques ordinarily required to obtain this information have not been performed, then those opinions may not be offered.

### 7.03 Clarification of Role

In most circumstances, psychologists avoid performing multiple and potentially conflicting roles in forensic matters. When psychologists may be called on to serve in more than one role in a legal proceeding—for example, as consultant or expert for one party or for the court and as a fact witness—they clarify role expectations and the extent of confidentiality in advance to the extent feasible, and thereafter as changes occur, in order

| STATE OF HAWAII FAMILY COURT FIRST CIRCUIT | ORDER APPOINTING CUSTODY GUARDIAN AD LITEM | CASE NUMBER FC-P   NO. 93-0625 |
|---|---|---|
| CATHERINE JANE VON KENNEL GAUDIN, Petitioner, v. JOHN R. REMIS, JR., Defendant. | Custody GUARDIAN AD LITEM (Name, Address, & Phone No.) MARIANITA LOPEZ 66-437 Kamehameha Highway, Suite 209 Haleiwa, Hawaii, 96712 Telephone: 637-7611 GUARDIAN AD LITEM FOR (NAME) JOHN ANOLANI REMIS, IV | |

Good cause appearing, IT IS ORDERED that pursuant to HRS Sections 560:5-105, 571-8.5(8), 571-24, 571-46(8), 571-47, 578-17, 584-9, 587-34 and/or HFCR 17(c) and 152, the person indicated above be appointed guardian ad litem to protect the interests of the minor child named above until final disposition of the case or unless sooner discharged by the court subject to the "Duties of a Guardian Ad Litem (GAL)" set forth on the reverse of this Order Appointing Guardian Ad Litem and incorporated herein.

IT IS ALSO ORDERED that said guardian ad litem shall serve effective: __September 18, 2000__

[X] without bond
[ ] without compensation but shall receive reasonable costs
[ ] as a volunteer of the Volunteer Guardian Ad Litem Program, said Program having the authority to act on behalf of the volunteer
[ ] and shall receive reasonable fees and costs
[X] fees and/or cost may be payable in whole or in part by an individual or agency, or by the court as the circumstances may justify  Fees not to exceed $5,000.
[ ] _____ may be required to reimburse the court for fees and costs paid as circumstances may justify and in an amount to be determined by the court.

IT IS FURTHER ORDERED that the guardian ad litem shall:
(1) Be allowed access to the child by the caretakers of the child whether caretakers are individuals, authorized agencies, or health care providers;
(2) Have upon presentation of this order to any agency, hospital, organization, school, individual or office, including but not limited to the Clerk of this Court, human services and/or child caring agencies, public or private institutions and/or facilities, medical and mental health professionals, law enforcement agencies and the Attorney General, the authority to inspect and receive copies of any records, notes, and electronic recordings concerning the child that are relevant to the proceedings filed under this chapter without the consent of the child or individuals and authorized agencies who have control of the child;
(3) Hold any information received from any such source as confidential, and shall not disclose the same except to the court and where allowed by the court, to other parties to this case and where provided by law;
(4) Be given notice of all hearings and proceedings including but not limited to administrative, family, civil, criminal, grand juries or appellate; and all conferences including but not limited to multi-disciplinary team meetings, individual educational program meetings or interagency cluster meetings, involving the child and shall protect the best interest of the child therein, unless otherwise ordered by the court;
(5) Appear at all court hearings to represent the child's interest, providing testimony when required; and
(6) Have party status in any agreement or plan entered into on behalf of the child.

| DATE SEP 1 8 2000 Honolulu, Hawaii | JUDGE [signature] (SEAL) | FAMILY COURT FIRST CIRCUIT COURT STATE OF HAWAII FILED 3:10 o'clock, P M. SEP 1 8 2000 A. MIYASATO Clerk |
|---|---|---|

cc: Senior Judge
Fiscal
GAL
Child's Attorney  Geoffrey Hamilton, Esq.
Child's Parents  John R. Remis, Jr., Esq.

**EXHIBIT 21**

I do hereby certify that this is a full, true and correct copy of the original on file in this office.
[signature] A. Miyasato

ORDER APPOINTING GUARDIAN AD LITEM

IN THE FAMILY COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

| | |
|---|---|
| CATHERINE JANE VON KENNEL GAUDIN,<br><br>            Plaintiff,<br><br>vs.<br><br>JOHN R. REMIS, JR.,<br><br>            Defendant. | )  FC-P nos. 93-0625 & 93-0925<br>)<br>)  CERTIFICATE OF SERVICE<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served on the following by depositing copies of same in the United States mail, this date, postage prepaid, addressed as follows:

> Chunmay Chang, Esq.
> 547 Halekauwila Street, #216
> Honolulu, Hawaii 96813
> Attorney for Defendant

DATED:    Honolulu, Hawaii, March 12, 2001.

_____
PAUL A. LYNCH
Attorney for Plaintiff

1