OR___ _AL

CC:SPK

LYNCH ICHIDA THOMPSON KIM & HIROTA
A Law Corporation

PAUL A. LYNCH
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. No. (808) 528-0100
Fax No. (808) 528-4997
E-mail: pal@loio.com
　　　　Sjk@loio.com
Attorney for Petitioner

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

APR 2 3 2007

at 3 o'clock and 51 min P M
SUE BEITIA, CLERK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CATHERINE JANE VON KENNEL GAUDIN, | ) CIVIL NO. 00-00765 SPK LEK<br>) (Other Statutory Actions)<br>) |
| Petitioner, | ) PETITIONER'S REPLY<br>) MEMORANDUM TO |
| vs. | ) RESPONDENT'S MEMORANDUM<br>) IN OPPOSITION TO PETITIONER'S |
| JOHN R. REMIS, JR., | ) MOTION TO STRIKE FORMAT, ALL<br>) DECLARATIONS, AND DISMISS |
| Respondent. | ) ARTICLE 13 DEFENSES FILED<br>) MARCH 30, 2007; CERTIFICATE OF<br>) SERVICE<br>) |
| | ) |

## PETITIONER'S REPLY MEMORANDUM TO RESPONDENT'S MEMORANDUM IN OPPOSITION TO PETITIONER'S MOTION TO STRIKE FORMAT, ALL DECLARATIONS, AND DISMISS ARTICLE 13 DEFENSES FILED MARCH 30, 2007

This memorandum is in reply to the Memorandum in Opposition to

Petitioner's Motion to Strike Format, All Declarations, and Dismiss Article 13 Defenses filed March 30, 2007 ("Petitioner Motion to Dismiss"), filed by Respondent herein on April 13, 2007. The response will be made *seriatim* by reference to the numbered paragraphs used in Respondent's Memorandum in Opposition.

1.    Respondent takes a position that "habitual place of residence" can no longer be presumed to be Quebec, Canada, but in fact must be presumed to be Honolulu, Hawaii. The position taken is without support, ignores the decision of the Ninth Circuit Court of Appeals that Petitioner could NOT even "legally form the intent" to become a permanent resident of the United States, leaving Canada as the "habitual place of residence", and ignores the fact that counsel who is asserting this position on behalf of the Respondent participated in all aspects of the appeal of the Ninth Circuit resulting in that decision. This is all more fully spelled out in Petitioner's Memorandum in Support of her Motion to Dismiss, at pp. 24-25, and in Petitioner's Memorandum in Opposition to Respondent's Motion to Dismiss Petition As Moot at pp. 2-8. It was pointed out in this motion filed by Petitioner that the position taken by Respondent and his counsel relative to this particular issue of permanent residence had no factual or legal support and that they both knew of that fact and that law, could not have misunderstood it when the decision

2

came down from the Ninth Circuit in *Gaudin II* (*Gaudin v. Remis*, 379 F.2d 631 (9th Cir. 2004). and yet takes an unjustified position knowing that the Petitioner had applied for "renewal" of a green card <u>which the Ninth Circuit declared to be invalid</u>. The facts and the law of the case speak for themselves, but there would appear to be a lack of appropriate forthcomingness in continuing to take a position that is thoroughly discredited. As a specific example of what would appear to be a deliberate misconstruction of the truth, in fact and in law, the statement is made by Respondent, "Now that Petitioner has disclosed her status as a United States permanent resident for which she applied for renewal sometime prior to the August 10, 2004, the Ninth Circuit's decision is thus based on an erroneous fact provided by the Petitioner." This senence is factually and legally false and inaccurate. Notwithstanding this falsity, then he draws whatever conclusion he wants and needs. However, the point to this is that the Petitioner's brief on her immigration status <u>ordered</u> by the Ninth Circuit in February, 2004, was referenced and quoted on pages 2-4 of the Petitioner's Memorandum in Opposition to the Motion to Dismiss As Moot filed by the Respondent. This material reveals that Petitioner had a green card in December, 2000, and yet that green card was <u>invalid</u> by virtue of her legally having "abandoned" her permanent resident status because of her not having met other requirements in order to maintain a valid lawful

3

permanent resident status, all unbeknownst to her, but nonetheless <u>not</u> avoiding
the legal conclusion of the consequence of the failure to so maintain. Thus, the
whole point is that her coming into the United States under those circumstances as
a Canadian citizen had to have been as a "visitor" as defined by the immigration
law. This is clearly spelled out in the memorandum provided to the Ninth Circuit
and clearly alluded to by the Ninth Circuit in its decision which in itself was also
clear that all of that being so, and they validated that it <u>was</u> so, then she was not in
a position legally to have formed an intent to be a permanent resident of the
United States, much less become one. That has not changed by virtue of anything
done or not done. To renew "nothing" is to get "nothing" .

    2.    Petitioner does state that Respondent has intentionally prolonged the
proceedings. How ingenuous, however, of Respondent and Respondent's counsel
to recite merely that portion of the delay that relates to the judgment of the Ninth
Circuit on August 22, 2005, up to April of 2007, a period of time which is one
year and 8 months. What counsel for Respondent omits to note is that the
statement was that Respondent has been delaying these proceedings since 2000, a
period of six years and four months. The delay during this period prior to the
August 22, 2005 decision, was initiated by actions of Respondent , and all of
which are outlined in the memorandum filed in support of this very motion as to

which this is a reply memorandum.  This outline was accordingly ignored by counsel for Respondent.  All of the delay began with the misleading,  if not fraudulent, representations of grave risk of psychological harm at the initial ICARA hearing in December, 2000.  There were many assertions of theory that had been sufficiently ruled against in prior cases, so as to cause one to reasonably conclude that they were asserted merely for purposes of delay.  *See* Memorandum In Support of Petitioner's Motion Dismiss, pp. 19 to 30.

3.    With respect to number 3, Petitioner relies upon her comments made in the Memorandum in Support of Motion with the additional comment that the so-called "Orders" she refers as to which there was no objection was not a consequence of a noticed contested hearing or after Petitioner had an opportunity to be heard.  The Court also has the option upon the request of any party or *sua sponte* to allow what is taking place here and that has been done by virtue of the Court's order at the hearing on February 13, 2007.  See Transcript thereof.  However, it should be noted that, contrary to what counsel for Respondent recites, Counsel for Petitioner was willing to go forward but did intend to state his objections on the record and to take as much time as he felt appropriate and necessary, subject to the Court's discretion, for cross-examination of witnesses.

4.    The material in paragraph 4 is a good example of obfuscation

Respondent as to the Motion to Dismiss the Article 13 defenses. The citation

of *Gaudin III* is an attempt to be reflective of the Hague Convention law and

therefore refers to standards included within the ICARA statute and Court

interpretations thereof, as applied to this particular case. Nobody is saying

otherwise, least of all Petitioner Lynch. However, the material pointed out in our

Memorandum in Support of Motion to which this Memorandum Of Respondent

Remis does not even <u>respond</u>, clearly spells out the reason and rationale under

which it can literally be said that the Declarations, the Proposed Findings of Fact

and Conclusions of Law and the attempt to show "grave risk of psychological

harm" at the present time, all relate to matters that not only do not rise to the level

of "grave risk of psychological harm", they in fact and in law cannot rise to the

level of "grave risk of psychological harm" for the very reason that the only harm

that is cited as being "the grave risk of psychological harm" is the separation of

the two siblings, the younger Andreas being separated from the older John. That

fact, if it is one, is not a legitimate factor to be looked at for purposes of "grave

risk of psychological harm". Furthermore, as is pointed out in the earlier memo by

Petitioner and the citation to the *Walsh v. Walsh* case, 221 F.3d 218 (CCA 1

2000), the disruption or discomfort caused by separation of the child experiencing

the alleged "grave risk of harm" due to the separation itself, which fact was due

to the wrongful retention by Respondent to begin with and/or due to the

"settlement" of the child in the place abducted to, and is NOT to be taken into

account in assessing whether or not there is "grave risk of psychological harm" to

return the child to accomplish the sole objective of the Hague Convention and the

ICARA legislation: to have whatever proceeding is to take place, if there is any,

relative to custodial rights take place in the place of habitual residence of the child

or children.  Therefore, for Petitioner Lynch to suggest that an Article 13 defense

cannot be mounted based on the assertions so far revealed in this proceeding in

2006 and 2007 is not an "inappropriate exercise of the appellate authority", it is a

proper subject for a motion to dismiss for lack of any factual or legal support.

     5.    Another good example of the tactics of Respondent Remis is

contained in paragraph 5 in the Memorandum in Opposition to Petitioner's Motion

when they say that "Petitioner Lynch has the burden to show Canada remains the

'habitual place of residence' and Canada is no longer the habitual place of

residence per Petitioner's permanent residence in the United States . . .".  The

Respondent is showing his limitless capacity to ignore the law and to assume the

conclusion he wishes the Court to arrive at.  The emphasized portion has NO

legal or actual support.  Petitioner Lynch merely points out in response to this the

following:

a)    Petitioner Lynch has shown that Canada is her and the boys' habitual place of residence in the year 2000;

b)    The Ninth Circuit Court in *Gaudin II* clearly determined that, notwithstanding the physical circumstances of Petitioner Lynch relative to the geography of the State of Hawaii, as a citizen of the country of Canada under factual circumstances applying to this case, she has not changed her habitual place of residence, and furthermore "habitual place of residence" relates to the place where the children were wrongfully taken from or retained away from.  Put another way, the point attempted to be made is just plain flat wrong.

6.    Respondent says: ". . . Remis has previously stated he does not have a quarrel with Petitioner Lynch's religion but the manner in which she applies it to the children that is harmful and abusive, emotionally and psychologically. . . ."  He goes on to say, "her practice and belief are harmful to the child, then they are relevant and not protected by privacy or otherwise."  It is merely pointed out to the Court that by virtue of the Rule 60(b) motion hereinabove mentioned in the Memorandum in Support of Petitioner's Motion in the first instance, and attached as an exhibit to that Motion, that there is clear and convincing, if not absolute, evidence of the fact that in whatever manner she practiced her religion, it was not a "grave risk of psychological harm".  *See* pp. 19-21 of Memorandum in Support

8

of Petitioner's Motion. In view of the fact that that took place in the year 2000,

and in view of the fact that Respondent and his witnesses have no other facts that

they cite or can cite relative to "a grave risk of psychological harm", by virtue of

the boys relationship to their mother, partially thanks to the attitude and practices

of Respondent Remis. Again the statements in paragraph 6 and the Memorandum

in Opposition to Petitioner's Motion is inaccurate, factually, and inaccurately

states the law relative to "grave risk of harm to the child": it has to be grave risk

of psychological harm, as those terms are defined in the statute and the case law,

which is not the simple statement put here in paragraph 6. The statements have to

be exclusively relevant to 2007 for purposes of such a condition existing today,

and it is Petitioner's contention that they cannot demonstrate factually, and as a

matter of law, that they can meet the standards of the Hague Convention and the

ICARA legislation in that necessary regard. Lastly, the statement that ". . . the

paramount interest is nevertheless the welfare of the child" is taken totally out of

context and is for that reason absolutely inaccurate and wrong. There is no

cognizable grave risk of psychological harm in this case. The then follow-up

statement that Petitioner's religious beliefs and dictates do not "guarantee her

parenting" ability is another example of an assertion of an absolute standard

implied by counsel where none exists and therefore one that is particularly

9

inappropriate, inaccurate, and wrong as a matter of law in this case. Furthermore,

when Counsel for Respondent talks about Petitioner's religious belief and dictates

"certainly cannot supersede the well-being of a child",than not only there negver

Having been demonstrated that at any time any conduct superseded the well being

of a child, but also  Respondent and his attorney have flat out ASSUMED their

conclusion, their assertion, their necessity and are talking about impermissible

considerations of child custody that DO NOT HAVE ANYTHING TO DO WITH

THE DECISION TO BE MADE BY THIS COURT.

  7. Counsel for Petitioner is the person who drafted the Motion to Strike

Format, All Declarations and Article 13 Defenses and is the one who drafted and

is responsible for the analysis and content of that document and anything in it, or

any exhibit referred to.  Counsel agrees that an attorney must show respect for the

judicial system, the Court and the officers thereof, including the jurists.  However,

the canons of ethics governing attorneys also require an attorney to tell the truth,

to assist the Court in the task of finding truth, which is the point behind calling an

attorney authorized to practice law before the Court, "an officer of the Court".

Having said that, undersigned Counsel will stand by anything and everything he

put in that memorandum, does not accept the characterization of any of that as

reflected by the words used by Counsel for Respondent in paragraph 7 on pages 5

and 6 of her Memorandum in Opposition to Petitioner's Motion. As to allegations with respect to the nature of documentation filed in any court involved in a proceeding, again counsel for Petitioner will stand by his recitation of the fact and the analysis of the consequences. Lastly, if therefore it can be said that the being called out a challenged as to signing a dubious if not inaccurate declaration places the boy in an intolerable situation, then the responsibility for the "intolerable situation" lies squarely with Respondent Remis and his attorney.

8.    The undersigned counsel for Petitioner reiterates and relies upon the material and the comments he made on pages 27-29 of the Memorandum in Support of Petitioner's Motion to Dismiss relative to the erroneous citation of *England v. England*, 234 F.3d 268 (Fifth Cir. 2000). The undersigned merely points out, as he did in the Memorandum in Support of the Motion that the nature of the error was such that it could not have been inadvertent. Furthermore, Respondent's paragraph 8 in the Memorandum in Opposition to Petitioner's Motion, on page 6 of the memorandum, is typical and continues to reveal clearly the way in which Respondent is attempting to use factors that he strings together argument "on the fly", which may be relevant in a plenary (full fledged) custody proceeding but are absolutely irrelevant to a determination as to whether the boy has sufficient age and maturity to have his views considered.

11

The younger boy has had no physical or telephone contact with his mother for more than 6 years. A question might occur as to how that can be and why. However, it is not appropriate to get into what Respondent or Petitioner did or did not do and what Petitioner did or did not do in view of the fact that those things have anything to do with the Hague Convention or ICARA or proceedigns under them.

Attorney for Respondent then characterizes the above as "Petitioner's abandonment of Andreas" – again getting into the circumstances of the dignified response of Petitioner relative to the condition set up by Respondent is not the proper subject matter for a Hague Convention hearing under ICARA . Keep in mind, for example, that there has been no question, nor has Petitioner brought any up, relative to there being no physical or telephone contact with her sons initiated by the sons. They have more freedom to do so with their father's permission than she did the other way around. The point: none of that is pertinent. The issue is NOT abandonment. IT IS ABDUCTION, which has already been determined.

The younger boy is said to be a superior student academically – not only does that have nothing to do with the circumstances in this case; the inference that he would not be as superior academically were he with his mother is not stated, but is rather obviously implied. THIS IS TOTALLY IMPERMISSIBLE IN A

HAGUE OR ICARA PROCEEDING.

The younger boy is engaged in team sports and a multitude of extracurricular activities. My comment here is exactly the same as it was in the paragraph above.

And lastly, we agree that under other circumstances the younger boy will have a right to have his age and maturity assessed by a Court but the question here becomes one of how the Court is going to do that in view of the interference and the obvious alienation and interference by somebody, by virtue of the fact of his copied declaration and that the only risk of psychological harm is the separation between the two siblings. The dubious genesis of Andeas' declaration seriously calls into question his age and maturity.

DATED:    Honolulu, Hawaii, April 23, 2007.

_Paul A. Lynch_
PAUL A. LYNCH
Attorney for Petitioner

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CATHERINE JANE VON KENNEL GAUDIN, | ) CIVIL NO. 00-00765 SPK LEK<br>) (Other Statutory Actions)<br>) |
| Petitioner, | ) CERTIFICATE OF SERVICE<br>) |
| vs. | )<br>) |
| JOHN R. REMIS, JR., | )<br>) |
| Respondent. | )<br>)<br>) |

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served upon

the following by depositing same in the United States mail, postage prepaid,

addressed as follows:

Chunmay Chang, Esq.
737 Bishop Street, Suite 2100
Honolulu, Hawaii 96813
Attorney for Respondent

DATED:    Honolulu, Hawaii, April 23, 2007.

_Paul A. Lynch_
PAUL A. LYNCH
Attorney for Petitioner