ORIGINAL

CHUNMAY CHANG #3302
737 Bishop Street, Suite 2100
Honolulu, Hawaii 96813
Tel. 808-536-2288
Fax 808-536-8807

Attorney for Respondent

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAY 0 7 2007

at 8 o'clock and 12 min P M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CATHERINE JANE VON KENNEL GAUDIN, nka LYNCH | ) ) ) | Civil No. 00-00765 SPK |
| Petitioner, | ) ) ) | RESPONDENT'S SUPPLEMENTAL BRIEF RE: 8 USC 1101(a)(15)(B); |
| vs. | ) ) | DECLARATION OF COUNSEL; EXHIBITS "A" – "C"; |
| JOHN R. REMIS, JR., | ) ) | CERTIFICATE OF SERVICE |
| Respondent. | ) ) ) ) | Motion Date: May 9, 2007 Motion Time: 10:00 AM Senior Judge: SAMUEL P. KING |

RESPONDENT'S SUPPLEMENTAL BRIEF RE: 8 USC 1101(a)(15)(B)

Comes now Respondent John R. Remis, Jr., by and through his attorney, Chunmay Chang, and hereby submits his Supplemental Brief Re: 8 USC 1101(a)(15)(B)

A. UNDISPUTED FACTS:

Petitioner has been a resident of Hawaii since May 2001. Paragraph b. of Stipulation of Facts filed herein on December 20, 2002. She sold her home in Canada and moved all of her belongings to Hawaii. Ibid. She purchased a new home at 539B Keolu Drive, Kailua, Hawaii. Ibid. On June 29, 2003, she married her attorney Paul Lynch, Esq., licensed to practice law in the State of Hawaii. Ibid.

In 2004, Petitioner represented her immigration status to the Ninth Circuit Court of Appeals as that of a nonimmigrant pursuant to 8 USC 1101(a)(15)(B). Attached as Exhibit "A" is

an unfiled copy of Mr. Lynch's February 4, 2004, letter brief to the Ninth Circuit Court. In said letter, there was no mention that Petitioner or her attorney husband had applied for an adjustment of her 'non-immigrant' status or for a renewal of her green card. On February 6, 2004, Respondent submitted a reply, a copy of which is attached as Exhibit "B". Accordingly, the Ninth Circuit Court determined that "Gaudin is precluded by law from relocating permanently to the United States. Gaudin is a Canadian citizen who has invoked the Immigration and Nationality Act ("INA") §101(a)(15)(B), 8 U.S.C. §1101(a)(15)(B), …" 379 F.3d 631, 636-37. "Gaudin is barred by law from possession the requisite intent to establish domicile in Hawaii. Because she cannot lawfully have moved permanently to Hawaii, the case is not moot …" Ibid.

At the February 13, 2007, hearing, Mr. Lynch disclosed for the first time that "[i]n 2003, when her green card was expiring, she applied for a new one." Transcript of February 13, 2007, hearing at page 11, Lines 14-15, a copy of which is attached hereto as Exhibit "C". At the same hearing, Mr. Lynch produced a copy of Petitioner's current green card, with an expiration date of July 10, 2014. Respondent's Ex. G in evidence. The letter attached to said card shows that the card being issued on July 10, 2004, prior to the Ninth Circuit Court's August 10, 2004 in Gaudin v. Remis, 379 F.3d 631 (9th Cir. 2004) ("Gaudin II"). Petitioner produced her green card before this Court pursuant to Respondent's subpoena after the court denied her motion to quash said subpoena. None of the foregoing information was given to the Ninth Circuit Court.

B. QUESTION PRESENTED:

Is presence in the United States under a "green card" inconsistent with presence in the United States under 8 USC §1101(a)(15)(B)? Yes, a "green card" issued to a legal permanent resident is premised upon the individual staying in the United States on a permanent basis; whereas 8 USC §1101(a)(15)(B) precludes an individual from staying here permanently.

2

C. APPLICABLE LAW:

Under 8 USC §1101(a)(15)(B), the term "immigrant" means every alien except an alien who is within one of the following classes of nonimmigrant aliens:... B) an alien...*having a residence in a foreign country which he has no intention of abandoning and who is visiting the United States temporarily for business...* (emphasis added).

Petitioner emphasized her (nonimmigrant) status was predicated upon her having a residence in a foreign country which she did not intend to abandon. It is conceded that in December 2000, such was petitioner's status. However, Petitioner stipulated before this Court in January 2003 that she had disposed of all her assets in Canada, moved to the United States, purchased a house in Kailua and married her lawyer, inter alia. In effect, Petitioner severed all ties with Canada save her alleged intent to return to her residence in Canada at an indefinite time.

8 USC §1101(a)(33) states the term "residence" means the place of general abode; the place of general abode of a person means his principal, *actual dwelling place in fact*, without regard to intent. (emphasis added). Given Petitioner's stipulation in 2003, the Ninth Circuit court found that regardless of her objective or subjective intent, she could not have permanently relocated because Section 1101 barred her from having an intent to permanently relocate to Hawaii. Thus, the issuance of the "green card" now allows Petitioner to form such an intent to remain here permanently, which is consistent with all the objective evidence.

The court in Pereira-Diaz v. INS, 551 F.2d 1149 (9th Cir. 1977) interpreted the language of 8 USC 1101(a)(15)(B), "...visiting the United States temporarily for business or temporarily for pleasure..." focuses upon the intended duration of the visit and not merely the proposed purpose. At bar, the reasonable, substantial, and probative evidence in the record, when considered as a whole, supports the conclusion that Petitioner is not now entitled to "nonimmigrant" status under

the standards of Section 1101(a)(15)(B) as properly applied. Trias-Hernandez v. INS, 528 F.2d 366, 370 (9th Cir. 1975).

Petitioner's and the Ninth Circuit's reliance upon the cases of Toll v. Moreno, 458 U.S. 1, 73 L.Ed.2d 563, 102 S.Ct. 2977 (1982), Elkins v. Moreno, 435 U.S. 647, 55 L.Ed. 614, 98 S.Ct. 1338 (1978), Carlson v. Reed, 249 F.3d 876 (9th Cir. 2001) and Graham v. INS, 998 F.2d 194 (3rd Cir. 1993) in *Gaudin II* are no longer apropos. Canadian nonimmigrant aliens are excused from the visa requirement. 8 C.F.R. § 212.1(a). A Canadian is classified as a "nonimmigrant" if she has no intention of abandoning her Canadian residence and is visiting the United States temporarily for business or temporarily for pleasure as in 8 U.S.C. §1101(a)(15)(B). See: United States v. One 1988 Chrysler Dynasty, 996 F.2d 1229 (9th Cir. 1993). These cases clearly assert that one cannot legally intend to be domiciled in the United States while in the United States temporarily on business with the intent to return to a foreign residence. Nonimmigrant aliens' status is far more constricted than that of resident aliens. Nonimmigrant aliens, as was Petitioner in December 2000 under 8 USC §1101(a)(15)(B), are admitted to the United States only for the duration of their status, and on the express condition they have "no intention of abandoning" their countries of origin and do not intend to seek permanent residence in the United States. They are admitted, remain, and must depart at the discretion of the Attorney General. Nonimmigrant aliens may not serve in the U.S. military, are subject to strict employment restrictions, incur differential tax treatment, and may be denied federal welfare benefits. The Supreme Court has yet expressly to bestow equal protection status on nonimmigrant aliens. LeClerc v. Webb, 419 F.3d 405 (5th Cir. 07/29/2005).

The above cases are distinguished from the current immigration status of Petitioner as an immigrant granted permanent resident status in the United States as follows. First, Petitioner

4

cannot intend to return to a foreign residence which does not exist; her actual dwelling place is 539B Keolu Drive, Kailua, Hawaii. Secondly, Petitioner applied for and was granted an adjustment of her immigration status to that or a renewal of permanent resident alien. Such adjustment cannot exist in a vacuum. It was Petitioner's alleged status as a nonimmigrant which was adjusted to that of an immigrant or permanent resident alien or her "abandoned" permanent resident status was renewed in 2004.

Choe v. INS, 11 F.3rd 925 (9th Cir. 1993) explains that in the 1952 Immigration and Nationality Act ("INA"), Congress enacted §245, 8 U.S.C. §1255, which authorizes "adjustment of status" from nonimmigrant to immigrant for aliens who meet certain requirements. The status of an alien who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed. This is the procedure by which Petitioner changed or renewed her immigration status to a permanent resident.

Aliens who obtain adjusted or 'renewed' status have a legitimate expectation that their immigration will be permanent. In Fulgencio v. INS, 573 F.2d 596, 598 (9th Cir. 1978), it was found unfair that an order of adjustment that was granted on a conditional basis because it "undermined the security which ought to attend permanent resident status." The court has since held that the INS may deport adjusted aliens at any time because of violations that are statutory bars. Yet adjusted aliens are still entitled to some minimal sense of security in their permanent resident status. They should not remain constantly at risk for deportation because of preconceived

intent, a discretionary factor considered during the adjustment proceeding itself.

Domicile suggests permanence as cited in Gaudin II in Kanter v. Warner-Lambert Co., 265 F.3d 853 (9th Cir. 2001). Domicile is understood to mean physical presence and the intent to remain somewhere indefinitely. Perry v. Pogemiller, 16 F.3d 138, 140 (7th Cir. 1993); Anwo v. INS, 607 F.2d 435, 437 (D.C. Cir. 1979)("Although the word 'domicile' is nowhere defined in the Immigration and Nationality Act, it is generally accepted that domicile is not established unless an individual intends to reside permanently or indefinitely in the new location."); see also Comment, Lawful Domicile Under Section 212(c) of the Immigration and Nationality Act, 47 U.Chi.L.Rev. 771, 775-76 (1980). In order to have a "lawful domicile," an alien must have the ability, under the immigration laws, to form the intent to remain in the United States indefinitely. See: Lok v. INS, 681 F.2d 107, 109 (2d Cir. 1982) wherein the Petitioner established lawful domicile only when his intent to remain here was legal under the immigration laws.

In an analogous case, Castellon-Contreras v. INS, 45 F.3d 149 (7th Cir. 1995), once an alien applied for amnesty, his status was adjusted to that of "lawful temporary residence." 8 U.S.C. §1255a(a); 8 C.F.R. § 245a.2(s). The status of an alien whose application for temporary residence status is approved shall be adjusted to that of a lawful temporary resident as of the date indicated on the application fee receipt issued at Service Legalization Office. Castellon-Contreras was found to be in the United States lawfully after the date on his application fee receipt.

The question remained whether Castellon-Contreras then could have formed the requisite intent to remain here indefinitely. The fact that his residence was only "temporary" could lead to the conclusion that he could not have become domiciled. The *Castellon-Contreras* court did not agree. In order to have his temporary residence adjusted to lawful permanent resident ("LPR") under IRCA, Castellon-Contreras had to continuously reside in the United States until he applied for LPR status. 8 U.S.C. §1255a(b)(1)(B)(i); see also 8 U.S.C. §1255a(b)(3)(A) wherein it is

6

provided that during temporary residence, "the Attorney General shall . . . permit the alien to return to the United States after such brief and casual trips abroad as reflect an intention on the part of the alien to adjust to lawful permanent resident status. . . .") *The INS concedes that after an alien's adjustment to LPR status, he can have the requisite intent to remain indefinitely.* The fact that a temporary resident, such as Castellon-Contreras, had to reside continuously in the United States and did so in order to be able to remain here permanently leads the court to conclude that he could establish lawful domicile as of the date on his application for amnesty fee receipt. Castellon-Contreras v. INS, 45 F.3d 149 (7th Cir. 1995) (emphasis added).

At bar, Petitioner, once granted legal permanent resident status in July 2004, was not proscribed from forming the intent to remain in the United States permanently. Such proscription was the basis for the decision in *Gaudin II.* The reasonable, substantial, and probative evidence already stipulated in the record, when considered as a whole, clearly demonstrate Petitioner's intent to reside permanently in the United States, especially in light of the fact that she adjusted her immigration status to that of permanent resident alien. Such adjustment now supersedes her former status.

D. CONCLUSION:

Petitioner is a permanent resident alien without any foreign residence and her principal place of abode and all other indicia of her connection with the United States demonstrate her clear and lawful intent to remain permanently in the United States. Petitioner has permanently relocated to the United States and is domiciled here. Accordingly, the Petition herein should be dismissed as being moot.

DATED: Honolulu, Hawaii, May 7, 2007.

_____
CHUNMAY CHANG
Attorney for Respondent