1           IN THE UNITED STATES DISTRICT COURT FOR THE

2                      DISTRICT OF HAWAII

3   CATHERINE JANE VON                )    CIVIL NO. 00-00765SPK-LEK
    KENNEL GAUDIN,                    )
4             Petitioner,            )    Honolulu, Hawaii
                                      )    February 13, 2007
5        vs.                          )    10:03 a.m.
                                      )
6   JOHN R. REMIS, JR.,               )    EVIDENTIARY HEARING
                                      )
7             Respondent.            )
                                      )
8   _____)

9                    TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE SAMUEL P. KING,
10            SENIOR UNITED STATES DISTRICT JUDGE

11  APPEARANCES:

12  For the Petitioner:          PAUL A. LYNCH, Esq.
                                 Lynch Ichida Thompson Kim
13                                 & Hirota
                                 1132 Bishop Street, Suite 1405
14                               Honolulu, Hawaii 96813

15

16  For the Respondent:          CHUNMAY CHANG, Esq.
                                 737 Bishop Street, Suite 3302
17                               Honolulu, Hawaii 96813

18

19

20  Official Court Reporter:     Cynthia Fazio, RMR, CRR
                                 United States District Court
21                               P.O. Box 50131
                                 Honolulu, Hawaii  96850
22

23

24

25  Proceedings recorded by machine shorthand, transcript produced
    with computer-aided transcription (CAT).

```
 1                          I N D E X

 2

 3    RESPONDENT'S:                              Page No.

 4    G was received in evidence.................. 28

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1   TUESDAY, FEBRUARY 13, 2007                      10:03 A.M.

 2             THE CLERK:  Civil Number 00-00765SPK-LEK, Catherine

 3   Jane Von Kennel Gaudin Lynch versus John R. Remis, Jr., et

 4   cetera.

 5             This hearing has been called for an evidentiary

 6   hearing.

 7             Counsel, your appearance for the record, please.

 8             MR. LYNCH:  Yes, Your Honor.  Good morning.  This is

 9   Paul Lynch appearing as attorney for Catherine Jane Gaudin

10   Lynch, the petitioner, who is present in court with me.

11             MS. CHANG:  Good morning, Your Honor.  Chunmay Chang

12   here on behalf of respondent John Remis, who is standing next

13   to me.  And, Your Honor, if I may introduce the children.  Next

14   to him is John Remis, Jr. and -- I'm sorry?

15             And next to him is his brother Andreas Remis, IV.

16             THE COURT:  Good morning.

17             I guess this is really here for your hearing,

18   Mr. Lynch.

19             MR. LYNCH:  No, Your Honor.

20             THE COURT:  This motion is --

21             MR. LYNCH:  This motion is mine, but the petitioner

22   has proved her case.

23             THE COURT:  Yeah, I thought that everything was going

24   to be submitted on affidavits and one thing and another.

25   What's the problem with the subpoena?
```

4

1          MS. CHANG:  Your Honor, we had issued another

2     subpoena -- another subpoena requesting Ms. -- Mrs. Lynch to

3     bring with her certain documents.

4          THE COURT:  I know what you wanted.  And what's the

5     problem, Mr. Lynch?

6          MR. LYNCH:  The problem, Your Honor, is that I thought

7     that the subpoena -- the first subpoena that was issued was

8     inappropriate and I filed a Motion to Quash, which was granted.

9     A Motion for Reconsideration of that was also granted.  So

10    another subpoena was issued.  And rather than appeal the

11    magistrate's ruling or do anything with it, I'm going to just

12    object to a portion of the subpoena this morning and I brought

13    records in response to it.  But this is discovery in an

14    evidentiary hearing to which I object greatly.  And I'd like to

15    put my objection on the record.

16         THE COURT:  What you wanted was a look at their visa,

17    is that it?

18         MS. CHANG:  Right.  Her passport, any applications she

19    may have made.

20         THE COURT:  Is there any problem with that, Mr. Lynch?

21         MR. LYNCH:  There is, Your Honor, merely in the sense

22    that her immigration status was determined as of August of 2004

23    by a panel of the Ninth Circuit.

24         THE COURT:  They want to look at it.

25         MR. LYNCH:  Look at what?

1          THE COURT:  Her visa.

2          MR. LYNCH:  She doesn't have a visa.

3          THE COURT:  Doesn't she have something in --

4          MR. LYNCH:  She has nothing.  She was declared to be

5    an illegal alien and she still is.

6          THE COURT:  Well, they said she came in on a visa that

7    prevented her from being a permanent resident.

8          MR. LYNCH:  No, she came in with a green card.  She

9    thought that she was -- she didn't know anything about this

10   abandonment theory, which the --

11         THE COURT:  Well, then the statement by the Ninth

12   Circuit is incorrect.

13         MR. LYNCH:  Which part?

14         THE COURT:  Let's see, what do they hold about the --

15         MS. CHANG:  I think the Ninth --

16         THE COURT:  They said she could not be a permanent

17   resident because she was under a visa that required her to go

18   back -- that did not permit her to become a permanent resident.

19         MR. LYNCH:  No.  She could not become a permanent

20   resident because she had abandoned her permanent resident --

21   permanent resident alien status by staying out of the United

22   States for more than a year.  As a matter of fact, it was like

23   for 6 years.

24         Okay.  So that legally the effect of that was an

25   abandonment and she had not done anything to restore any status

6

1    making her capable of having a legal intent to permanently

2    reside --

3            THE COURT:  "At present Gaudin is precluded by law

4    from relocating permanently to the United States."  Is that

5    right?

6            MR. LYNCH:  That's correct.  She would have to file an

7    application.

8            THE COURT:  By what law?

9            MR. LYNCH:  I think it's 1101(a)(15)(B) is the one

10   that was cited in the letter brief that was in --

11           THE COURT:  She had a green card?

12           MR. LYNCH:  She had a green card, but you lose your

13   permanent resident alien status if you stay out of the United

14   States beyond a certain period of time.  I am not an

15   immigration lawyer, but that's my understanding of it.

16           THE COURT:  So --

17           MR. LYNCH:  You will recall, Your Honor, we were here

18   before you three -- 4 years ago.

19           THE COURT:  The Ninth Circuit quoted that she was here

20   as a member of the class of nonimmigrant aliens, quote, an

21   alien having a residence in a foreign country which he/she has

22   no intention of abandoning and who is visiting the United

23   States temporarily for business or temporarily for pleasure.

24           MR. LYNCH:  That's correct.

25           THE COURT:  That was what, 7 years ago?

7

1          MR. LYNCH:  No, that decision was two-and-a-half years

2    ago.

3          THE COURT:  How many?

4          MR. LYNCH:  August of 2004.

5          THE COURT:  When she came in?

6          MR. LYNCH:  No, that was the decision by the Ninth

7    Circuit.

8          THE COURT:  No, no, her visa.

9          MR. LYNCH:  She didn't have a visa, Your Honor.  There

10   is no visa.

11          THE COURT:  Green card, they say -- were they

12   incorrect?

13          MR. LYNCH:  No.  They're correct.

14          THE COURT:  "She came in under the provision in the

15   law that provided for nonimmigrant aliens, an alien having a

16   residence in a foreign country which he/she has no intention of

17   abandoning and who is visiting the United States temporarily

18   for business or temporarily for pleasure."

19          MR. LYNCH:  Your Honor, if I may -- if I may remind

20   the court of, we had a hearing 4 years ago.  We didn't raise

21   her immigration status as a basis for the court's finding her

22   not --

23          THE COURT:  But they did.

24          MR. LYNCH:  They did.

25          THE COURT:  Yeah.

1    MR. LYNCH:  They asked for a briefing on -- on her

2  immigration status and I had an immigration lawyer look at it

3  and we briefed it.  And -- and the --

4    THE COURT:  So she's been here temporarily since 19 --

5  two thousand and -- when was it?

6    MR. LYNCH:  2001.

7    THE COURT:  2001?

8    MR. LYNCH:  Yeah.  Well, she -- when she came for the

9  first hearing on December 8th, 2000.

10    THE COURT:  And you think that --

11    MR. LYNCH:  By virtue of not having gone into the

12  United States at least once a year during the six years --

13  six-and-a-half years she spent in Canada where she didn't go to

14  the United States except once, she lost as a matter of law --

15    THE COURT:  I'm talking about her presence in the

16  United States now.

17    MR. LYNCH:  If she doesn't have -- if she doesn't have

18  the permanent resident alien card, then she comes into the

19  United States as a visitor.

20    THE COURT:  Temporarily?

21    MR. LYNCH:  Six months is my understanding back -- I

22  don't know what it is now, but it was 6 months back then.

23    THE COURT:  The statute says temporarily.

24    MR. LYNCH:  The statute says temporarily.

25    THE COURT:  So she's not under that provision any

1   more?

2           MR. LYNCH:  No, she's not under that provision any

3   more.

4           THE COURT:  So what is her status?

5           MR. LYNCH:  Her status, I think, is that she's an

6   illegal alien.  She is deportable.

7           THE COURT:  She's a deportable alien.

8           MR. LYNCH:  She does not have -- what they said was

9   that as a matter of law she couldn't even form the intent

10  without filing an application.

11          THE COURT:  So she came in on a green card anyway.

12          MR. LYNCH:  She came in on her pass -- her Canadian

13  passport.  And she had a green card; the green card expired in

14  2003.

15          THE COURT:  Does that satisfy you, counselor?

16          MS. CHANG:  At this point, yes, but we also asked

17  Mr. Lynch to see if Mrs. Lynch has submitted --

18          THE COURT:  She came in on a green card.

19          MS. CHANG:  Right.  And since he apparently is aware

20  that the green card expired in 2003, we would like to know if

21  she has done anything.  But from his representation, I assume

22  that she is illegal and deportable at this point.

23          THE COURT:  What more do you want?

24          MS. CHANG:  Well, I think that's fine, Your Honor.

25  That's fine, Your Honor.  I think the other documents we asked

1  for was --

2       THE COURT:  So you don't need to bother her with --

3  right?

4       MS. CHANG:  As far --

5       THE COURT:  There's a subpoena out for her with a

6  Motion to Quash.  And if you get the statement from Mr. Lynch,

7  does that satisfy your --

8       MR. LYNCH:  I -- I'd like to be straight up here, Your

9  Honor.

10      You will recall that in January of 2003 when you were

11 told by the Ninth Circuit to have an evidentiary hearing as to

12 whether she was a permanent resident, we all agreed that

13 certain domiciliary type factors should be looked at to

14 determine whether she was a permanent resident.  We didn't

15 raise her immigration status because I didn't know that there

16 was anything other than a permanent resident alien, okay.  You

17 found that she was a permanent resident of the State of Hawaii,

18 and per the instruction and mandate of the Ninth Circuit you

19 dismissed the case as moot.  I appealed that --

20      THE COURT:  Oh, I know that.

21      MR. LYNCH:  -- no, on two grounds.  One was that

22 she -- she stated her intent was to come here until such time

23 as she could get her boys back and then she was going back to

24 Quebec.  Then I also stated that the rule about mootness that

25 was adopted by that first Ninth Circuit panel was bogus.  I

1  still feel it is, but I can't get up there to challenge it.

2           So we go up to this court.  This court says brief her

3  immigration status.  We did.  And they said she abandoned, she

4  abandoned legally, legally she abandoned her permanent resident

5  alien status because she didn't come into the United States the

6  requisite number -- the requisite period or the requisite

7  number of times.  Therefore, she was in a status where she

8  legally could not form the intent.  That's what they said.  And

9  that therefore since domicile was the standard, they decided

10  that she -- the case was not moot and she could not legally

11  form the intent and she couldn't do it until such time as she

12  put an application in to correct that, to get some sort of

13  permanent resident status.  We haven't done that obviously.

14           However I want to be straight about this.  In 2003

15  when her green card was expiring, she applied for a new one.

16  Because she still didn't know that, you know, there was

17  anything --

18           THE COURT:  Did she get a new one?

19           MR. LYNCH:  She got a new one, one month before the

20  decision from the Ninth Circuit.  I have it right here and I'm

21  more than willing to turn it over to -- however, I point out,

22  Your Honor, the law is that the green card, okay, does not

23  determine status.  Seems like it does, looks like it does, but

24  it was just a renewal.  Unless she put in an application to do

25  away with the abandonment that the Ninth Circuit found, the

1   green card means nothing.  And it has been sitting in my

2   desk --

3           THE COURT:  But her ability to enter the United States

4   was based on the green card, right?

5           MR. LYNCH:  I don't know the answer to that question.

6   Her -- her Canadian passport has been stamped with her coming

7   into the United States.  So I don't know whether she just used

8   it as a Canadian resident --

9           THE COURT:  Well, that's what they want to find out.

10          MR. LYNCH:  I'm sorry?

11          THE COURT:  That's what they want to find out.

12          MR. LYNCH:  Well, it doesn't --

13          THE COURT:  Under what -- under what kind of condition

14  did she enter the United States?

15          MR. LYNCH:  It doesn't make any difference, Your

16  Honor.

17          MS. CHANG:  Yes, it does.

18          THE COURT:  That's not for you to decide.

19          MR. LYNCH:  No, the Ninth Circuit has already

20  determined that she had abandoned her status and that unless

21  she did something, she -- the resident alien card didn't do

22  anything to change her abandonment.

23          THE COURT:  She abandoned her status?

24          MR. LYNCH:  As a matter of law they legally declared

25  that because she did not come into the United States, the green

1    card became void.

2            THE COURT:  Where do they say that?  I don't remember

3    seeing that.  Do you see that?

4            MR. LYNCH:  If I might?

5            THE COURT:  The green card became void?

6            MR. LYNCH:  They didn't talk about the green card at

7    all.

8            THE COURT:  One of the decisions by the Ninth Circuit?

9            MR. LYNCH:  They just -- and it's 2005 -- they spend

10   three pages, Your Honor, talking about -- almost three pages

11   talking about concepts relating to domicile.  And then they

12   said -- now, I am quoting from the printed publication when the

13   decision first came down.  This is --

14           MS. CHANG:  I'm sorry, Mr. Lynch, can you clarify

15   which opinion you're reading from?

16           MR. LYNCH:  Yeah, I'm reading from what's known as

17   Gaudin II, which is a decision of the Ninth Circuit dated

18   August 10th, 2004.

19           MS. CHANG:  And what section are you --

20           THE COURT:  Where is the statement?

21           MR. LYNCH:  I'm looking in Roman numeral four, which

22   is, in this particular version, the last two pages.

23           Says in footnote number three, and this again, I

24   don't -- it says at the beginning of Roman numeral four:

25   "Notwithstanding the objective evidence of Gaudin's move to

1    Hawaii and the uncertainty concerning her subjective intent to

2    relocate permanently there, we disagree with the district

3    court's conclusion.  We base our judgment on the fact that at

4    present she is precluded by law from relocating permanently to

5    the United States.  Gaudin is a Canadian citizen who has

6    invoked the Immigration and Nationality Act 101(a)(15)(B) -- 8

7    U.S.C. Section 1101(a)(15)(B) as the basis for her current

8    presence in the United States."

9          Then it says in a footnote:  "We note that the details

10   of this immigration status were not presented to the district

11   court.  Rather, the issue was raised by this court prior to

12   oral argument in an order requesting supplemental briefing."

13         They had requested a letter brief on her immigration

14   status just 2 weeks before the oral argument up in San

15   Francisco.

16         THE COURT:  That's the provision that provides in

17   relevant part the nonimmigrant alien was "an alien having a

18   residence in a foreign country which he has no intention of

19   abandoning and who is visiting the United States temporarily

20   for business or temporarily for pleasure."  That's what she's

21   coming under?

22         MR. LYNCH:  That's what she is deemed to be coming

23   here for as a matter of law.  If you go on, Your Honor, and

24   read footnote -- this is number four on this one, it's the next

25   paragraph, the Supreme Court has cited this provision as "an

1    example of a statute in which Congress has precluded the

2    covered alien from establishing domicile in the United States."

3    That's the legal conclusion that caused them to reverse Your

4    Honor's determination that she was a permanent resident of the

5    State of Hawaii.

6        They go on to say:  "Even if an alien temporarily in

7    the United States could establish a subjective intent to remain

8    permanently in a state, she would lack the legal capacity to

9    establish domicile in the United States," citing a case of

10   Carlson v. Reed and then saying "see also Graham v. INS.

11       So Paragraph Number 5, Your Honor, just before the --

12   the second to the last paragraph in the whole opinion says:

13   "In sum, we conclude that Gaudin is barred by law from

14   possessing the requisite intent to establish domicile in

15   Hawaii."  Because she cannot lawfully have moved permanently to

16   Hawaii, the case is not moot.

17       THE COURT:  What we're trying to get rid of right now

18   is that subpoena and the objection to the subpoena.  Are you

19   satisfied you got what you wanted?

20       MS. CHANG:  Your Honor, I will ask Ms. Gaudin to

21   testify or represent --

22       THE COURT:  What have you got?

23       MS. CHANG:  Right now I have her permanent resident

24   card that was issued before the opinion that Mr. Lynch was

25   referring to.  It was issued on July 10th, 2004.  Exactly

16

1    30 days before the opinion.  And according to Mr. Lynch that

2    the appellate court asked for briefing 2 weeks prior to the

3    opinion --

4              MR. LYNCH:  No, the oral argument.

5              THE COURT:  No, that's our --

6              MR. LYNCH:  The oral argument.

7              THE COURT:  Have you got all the papers that you

8    wanted?

9              MS. CHANG:  No, Your Honor.  We also asked Ms. Gaudin

10   to produce her income tax returns from 2001 to present.

11             THE COURT:  Tax return?

12             MS. CHANG:  Yes, Your Honor.

13             MR. LYNCH:  They are not relevant.

14             THE COURT:  You object to that?

15             MR. LYNCH:  I object to that completely.

16             THE COURT:  Objection sustained.  Anything else?

17             MS. CHANG:  Your Honor, at this -- as far as the

18   subpoena itself is concerned, no, Your Honor, except we would

19   like Ms. Gaudin to verify what she has produced.  And the next

20   thing we will ask the court to consider is, we didn't realize

21   this and so at this point we will orally move the court to

22   dismiss this action again based on mootness.

23             THE COURT:  Well, I understand that, but is there

24   anything more you want out of the subpoena that you issued for

25   Mrs. Lynch?

1          MS. CHANG:  No, Your Honor.

2          THE COURT:  So, you've gotten it and the subpoena is

3    quashed.

4          MR. LYNCH:  No, the subpoena was quashed; they were

5    allowed by Motion for Reconsideration to reissue a new

6    subpoena.  This is in response to the new subpoena.

7          THE COURT:  Motion for what?

8          MR. LYNCH:  A Motion for Reconsideration.

9          THE COURT:  Oh, well, let us get one thing at a time.

10         MR. LYNCH:  No, Your Honor, the motion was quashed,

11    both because of the reasons given in it and because there

12    was --

13         THE COURT:  -- quash the subpoena against Mrs. Lynch.

14         MR. LYNCH:  Yeah, that was the first one, though.

15    There was --

16         THE COURT:  Yeah, that's quashed.

17         MR. LYNCH:  Okay.  Then a Motion for

18    Reconsideration --

19         THE COURT:  Wait, wait, wait.  Let's get rid of one at

20    a time.

21         MR. LYNCH:  Okay.

22         THE COURT:  So she's not under subpoena anymore.

23         MR. LYNCH:  No, she is.

24         THE COURT:  All right.  Now, the next thing is, what

25    else is pending?

1          You may sit down, Mrs. Lynch.

2          A Motion to Quash what?

3          MR. LYNCH:   Now, the motion -- there is no Motion to

4   Quash pending.   The Motion to Quash on the first subpoena was

5   granted.   A Motion for Reconsideration was filed by the

6   respondent.

7          THE COURT:   Motion to -- for reconsideration --

8          MR. LYNCH:   Of the -- of the granting of the motion

9   to --

10         THE COURT:   That's pending -- pending now.

11         MR. LYNCH:   No, that was decided in their favor and

12  they were granted the right to engage in discovery during this

13  evidentiary hearing.

14         THE COURT:   Motion for Reconsideration -- wait.   I

15  think I have it over here.

16         MR. LYNCH:   So therefore a new subpoena was issued

17  10 days ago, was served 10 days ago, with a description similar

18  to the first one but slightly different.

19                  (Perusing documents.)

20         THE COURT:   I'm not -- I'm not sure what's pending.

21              (Court and law clerk conferring.)

22         THE COURT:   There's nothing pending.

23         MR. LYNCH:   I'm sorry, Your Honor, pending with

24  respect to which --

25         THE COURT:   Motion for Reconsideration of what?

1          MR. LYNCH:  No, that -- that motion was granted.  And

2     so therefore that -- by the granting of that motion they were

3     explicitly allowed to issue another subpoena in connection with

4     the hearing held to --

5          THE COURT:  Yes.

6          MR. LYNCH:  And they did that.  And so what we've been

7     talking about --

8          THE COURT:  Well, I'm quashing the subpoena against

9     her.

10         MR. LYNCH:  Okay.

11         THE COURT:  What else is lifted?

12         MR. LYNCH:  Well, with respect to that decision there

13    isn't anything else that's lifted.  But we're here this morning

14    for the evidentiary hearing on the remand, or are we?

15         THE COURT:  Well, let's take this thing one thing at a

16    time.

17         We're now ready to argue the case on the merits.

18         MR. LYNCH:  No, Your Honor.

19         THE COURT:  No?

20         MR. LYNCH:  No.

21         THE COURT:  What's left?

22         MR. LYNCH:  Well, Your Honor, there is -- the mandate

23    of the Ninth Circuit called for several things to be done and

24    they actually went and spelled out the order.  Aside from

25    that --

1          THE COURT:  That's the one of --

2          MR. LYNCH:  I have -- I have a number of objections

3    that I wanted to place on the record.  And then those

4    objections also relate to an oral motion to strike.

5          THE COURT:  I thought this was set for evidentiary

6    proceedings and everybody's provided declarations.  So what is

7    it that you want to do before you get to the merits?

8          MR. LYNCH:  Well, amongst other things, Your Honor,

9    I'm entitled to cross-examine the declarants on their

10   declarations.  I have major objections to the declarations

11   themselves.  I have a major objection to the format of having

12   an evidentiary hearing in the form of declarations for direct

13   testimony because even though a judge --

14         THE COURT:  Oh, I thought you folks all agreed to

15   that.

16         MR. LYNCH:  No.  No.  There was no agreement, Your

17   Honor.

18         MS. CHANG:  Your Honor, Judge -- Magistrate Judge

19   Kobayashi issued that order, I can't remember, a year ago.

20         THE COURT:  I thought that's what she did.

21         MS. CHANG:  And Mr. Lynch never voiced an objection,

22   Your Honor.

23         THE COURT:  This matter was set for evidentiary

24   hearing on October 24, 2006 at 10:00 a.m. before me.  "Each

25   party is to file its proposed findings of fact and conclusions

1    of law by October 10th, 2006."  And then you let us know that

2    you were not aware of that.

3            MR. LYNCH:  That's correct, Your Honor.  Thank you

4    for --

5            THE COURT:  Which was a big surprise to us, so...

6            MR. LYNCH:  Not as much as to me.

7            THE COURT:  We -- the parties shall file -- but we

8    changed the date to give you time to do that.  "The parties

9    shall file and provide the court and opposing counsel with a

10   declaration setting forth the direct testimony of any witnesses

11   that party intends to call to testify at trial.  The

12   declaration shall be in lieu of live direct testimony.  The

13   witness shall be available at the hearing for live

14   cross-examination unless opposition counsel stipulates that no

15   cross-examination is required."

16           So what are we going to do now?

17           MR. LYNCH:  Well, Your Honor, and the fact that the

18   format chosen was the issuance or the submission of

19   declarations doesn't mean I don't have a right to object to

20   what's in the declarations.

21           THE COURT:  Well, you're given the right to

22   cross-examine.

23           MR. LYNCH:  But -- but that means -- you know, even a

24   judge can't un-ring the bell.  And so therefore, if there

25   are -- if there are declarations that are just full of stuff

1   that's just not admissible, then I can cross-examine until I'm

2   blue in the face because you've already read them all.  And so

3   therefore, for that reason and that reason alone, I want to put

4   on the record my objection and a Motion to Strike everything

5   I'm objecting to in those declarations.

6         THE COURT:  What do you want to do?

7         MR. LYNCH:  Your Honor, what I want to do is, as I

8   understand it, the issues according to the Ninth Circuit on the

9   mandate is, one, we are to look and see if there's any present

10   grave risk of psychological harm if they're going to assert an

11   Article 13(b) defense.  Okay.  And I have much to comment about

12   that and much cross-examination about it.

13         THE COURT:  Who do you want to cross-examine?

14         MR. LYNCH:  I want to cross-examine everybody that

15   submitted a declaration.

16         THE COURT:  Well...

17         MR. LYNCH:  That -- that'll depend upon the court's

18   ruling on my objections on the declaration.

19         THE COURT:  That's what we're here for.

20         MR. LYNCH:  Okay.  That's who, but you're asking me

21   who I want to cross-examine.  I may change my mind depending

22   upon what happens to my objections on the declaration.

23        But, Your Honor, what we're here for is, one, to

24   determine whether or not the respondent is going to assert a

25   defense of grave risk of psychological harm; and if he is, then

1    we have to get into all that as to whether there is or not,

2    what evidence there is, what cross-examination there is.

3         Then if you do find by clear and convincing evidence

4    that there is grave risk of psychological or physical harm,

5    okay, then you have to take a look at doing an undertaking.

6    And if you don't find number one or if you do find number one,

7    but you find number two, then you're supposed to take a look

8    and decide whether these boys have sufficient age and maturity,

9    because there was a third defense that didn't apply back in

10   December of 2000 because the boys were only seven and nine then

11   and nothing was done with it.  But the Ninth Circuit helpfully

12   suggested that it might be used now to see if the boys are of

13   sufficient age and maturity so that the judge could decide and

14   that they have considered opinions that he could take into

15   account and do so in his discretion to determine whether or not

16   he was going to let them stay here.

17        All of that, Your Honor, has to do with where the

18   custody trial is supposed to be.

19        THE COURT:  I'm still confused as to whether you want

20   to do any evidentiary matters now.  In addition to --

21        MR. LYNCH:  I frankly, Your Honor, unless we change

22   the format or something, I see several days of examination

23   based upon what I want to do now.

24        THE COURT:  You object to proceeding with the

25   declarations?

1        MR. LYNCH:  I object to proceeding with the

2   declarations in their present form.  I -- you know, put them on

3   the stand for direct.  I get to object when the question is

4   asked rather than when the answer is given.

5        THE COURT:  So what do you want to do?

6        MR. LYNCH:  I don't know, Your Honor.  I did not

7   anticipate this.

8        THE COURT:  You want to cross-examine anybody?

9        MR. LYNCH:  I want to cross-examine them all.

10        THE COURT:  Well, that's what we're here for.

11        MR. LYNCH:  Well, except I want to first put on the

12   record my objections to the declarations.  You can -- you can

13   overrule my objections, but I mean I want to put on the record

14   my objections to the declarations.

15        THE COURT:  What do you --

16        MS. CHANG:  Well, Your Honor, actually because what

17   Mrs. Lynch produced this morning, I believe Mr. Lynch on her

18   behalf has misrepresented to the Ninth Circuit as well as this

19   court when we had the hearing on -- the evidentiary hearing on

20   the permanent -- whether she intended to permanently move to

21   Hawaii.  And I think in some ways the plan or the scheduled

22   evidentiary hearing today may be a waste of the court's time

23   because it's really moot.

24        It's clear that Mrs. Lynch is now permanently here and

25   so there's really no habitual place of residence for the

1    children.  So if it's relevant to the undertaking, I mean

2    there's no place for her to really do an undertaking in Canada.

3         And I believe that Mr. Lynch also committed fraud on

4    the court when we were here on the determination, evidentiary

5    hearing on the permanent -- they intend to permanently locate

6    here, that he did not represent to the court that she intended

7    to live here permanently because she came into the country in

8    2000 or 2001 with a green card, Your Honor.

9         I think had the Ninth --

10        THE COURT:  Well --

11        MS. CHANG:  So I think right now this whole case

12   should be dismissed because it is --

13        THE COURT:  I wasn't sure that was in front of me

14   today.

15        MR. LYNCH:  Yeah, Your Honor, that is an absolute

16   misrepresentation and if she wants to brief it I'll be more

17   than happy to.  But Rule 11 here we come.

18        MS. CHANG:  Well --

19        MR. LYNCH:  I -- I just read from the record what the

20   Ninth Circuit said.  What the Ninth --

21        THE COURT:  -- the Ninth Circuit.  I'm going to give

22   them another chance to say so.

23        What we're here before -- we have an order by Judge --

24   who was it -- Leslie Kobayashi.  You object to that order?

25        MR. LYNCH:  It doesn't make any difference because I

1    responded to it anyway.  I object to it, yes.

2          I'm sorry, you're talking about -- you're talking

3    about the July 6th one?  I just want to make it clear that it

4    was said that we all agreed to that and I didn't agree to that.

5    And if I agreed to it back in September of 2005, which is a

6    different day under different circumstances, but if I did agree

7    to it I didn't agree to waive my objection to whatever was in

8    the declarations.

9          THE COURT:  So you object to this order that she

10   entered on July 6th?

11         MR. LYNCH:  Yeah, I wasn't aware of that order as you

12   may recall, Judge, until --

13         THE COURT:  Do we have an objection filed here?  I

14   didn't see any objection.  Do you want to object now?

15         MR. LYNCH:  I want to object to the format.  Then I

16   want to -- I did not waive even under that my right to object

17   to the contents of each declaration.  I see a difference there,

18   Your Honor.  You're talking about --

19         THE COURT:  You object to "the parties shall file and

20   provide the court and opposing counsel with a declaration

21   setting forth the direct testimony of any witnesses that that

22   party intends to call to testify at trial.  The declaration

23   shall be in lieu of live direct testimony.  The witness shall

24   be available at the hearing for live cross-examination, unless

25   opposition counsel stipulates that no cross-examination is

1    requested."

2            MR. LYNCH:  I understand.

3            THE COURT:  You object to that?

4            MR. LYNCH:  I didn't have anything -- I didn't see

5    that order.  I didn't have anything to do with it until --

6    until late October.  And so do I object to it?  Yes, I object

7    to it.  I understand --

8            THE COURT:  Did you file any objection to this order?

9            MR. LYNCH:  No, I did not.  They -- I found out about

10   this because I already got their papers.  But even with that

11   order, Your Honor, I did not waive my right to object to the

12   contents of --

13           THE COURT:  But you found out on October 9th or so

14   because I remember being told that somebody called you and said

15   you hadn't filed any papers, and you said:  I don't know

16   anything about the order.

17           MR. LYNCH:  No.  No, Your Honor.

18           THE COURT:  So then you got a copy of the order and we

19   moved the date over.

20           MR. LYNCH:  I found out on October 16th.

21           THE COURT:  Well, we moved the date to -- to --

22           MR. LYNCH:  November.

23           THE COURT:  Today, I guess.

24           MR. LYNCH:  November.  And then because of the Motion

25   to Quash --

28

1          THE COURT:  To quash what?

2          MR. LYNCH:  The subpoena that was served by --

3          THE COURT:  That's taken care of.

4          MR. LYNCH:  That's taken care of.

5          THE COURT:  The subpoena on Mrs. Lynch.

6          What else did you file?

7          MR. LYNCH:  Then I filed on November 21st, 7 days

8    before the hearing on November 28th --

9          THE COURT:  To do what?

10          MR. LYNCH:  The things required of me to file.  But we

11    didn't go forward on November 28th because one of the things I

12    filed was a Motion to Quash.  So the date was moved from

13    November 28th to --

14          THE COURT:  Well, I've taken care of the Motion to

15    Quash, haven't I?

16          MR. LYNCH:  Yes, that's -- that's handled.

17          THE COURT:  So what's pending?

18          MR. LYNCH:  What's pending is --

19          THE COURT:  You do not want to proceed in accordance

20    with the order that Judge Kobayashi entered?

21          MR. LYNCH:  I -- I want to put on the record my

22    objections to the declarations, each and every one, and I think

23    it will take sometime --

24          THE COURT:  Well, yeah, we can do that.

25          MR. LYNCH:  Okay.  And I want the court to rule on my

1   objections.  I'm making on oral Motion to Strike.  And then
2   I --
3           THE COURT:  To strike what?
4           MR. LYNCH:  To strike what I will read into the record
5   I object to in each declaration.
6           THE COURT:  You object to?
7           MR. LYNCH:  Judge, if I may, what I object to is that
8   this is a Hague Convention proceeding.  A Hague Convention
9   proceeding is for the limited and simple purpose of seeing to
10  it that if there is a custodial fight or a problem between a
11  mother and a father where one has -- has wrongfully kept the
12  kids --
13          THE COURT:  You've oversimplified the matter.
14          MR. LYNCH:  Huh?
15          THE COURT:  You've oversimplified the matter.
16          MR. LYNCH:  No, I haven't oversimplified the matter,
17  Your Honor, because the proceeding is to take place in the
18  place of habitual residence of the children.  Now, an exception
19  to that would be an Article 13(b) defense.  And an Article
20  13(b) defense --
21          THE COURT:  Do you object to proceeding with this
22  hearing?
23          MR. LYNCH:  I object to proceeding with the way it's
24  set up now.  But I tell you what, I tell you what, overrule me,
25  Judge, because -- and I don't want to go up to the Ninth

1   Circuit again.  I think I'm going to wind up going to the Ninth

2   Circuit anyway, but I want to go up with something I can appeal

3   and get a reversal.

4        I think, for example, you take what Ms. Chang is

5   talking about what I consider to be the bogus rule on the

6   Motion to Dismiss.  Not one case cited by them or by the Ninth

7   Circuit to create this rule that says once subject matter

8   jurisdiction attaches it goes --

9        THE COURT:  So you're not prepared to go ahead with

10  the evidentiary hearing?

11       MR. LYNCH:  Oh, I am.  I am.  But I -- but I am making

12  my objections known as to the format in which this is set up.

13  Let me put it this way, Judge:  The objections which I will

14  read into the record, if you'll allow me, on those

15  declarations, okay, all have to do with an attempt to have you

16  determine the custody question.  They did it 6 years ago,

17  they're doing it again today.

18       I'll do whatever I have to do to cross-examine and

19  everything, but that's just plain wrong.  That's not what the

20  Hague is about.

21       And tell you what, you know, Judge, the fact of the

22  matter is if it's as bad as they say and everything, they could

23  have gone back to Quebec a long time ago, had a custody

24  proceeding back there and if it turns out the way they say it

25  must turn out, we wouldn't be here today.

1          THE COURT:  Well, if the Ninth Circuit had sustained

2     me we wouldn't be here today.

3          MR. LYNCH:  Well, I take that --

4          THE COURT:  Where's my --

5          MR. LYNCH:  Tell you what, Your Honor, I would like to

6     brief this.

7          THE COURT:  What do you want to do, Mr. Lynch?

8          MR. LYNCH:  I would like to brief my objections to the

9     declarations.  I would like to brief my objections to anything

10    being brought up in the nature of a determination of custody --

11         THE COURT:  I would like to have you put it in

12    writing.

13         MR. LYNCH:  All right.  I will.  I take it -- I take

14    it from what Ms. Chang says that she was probably going to --

15         THE COURT:  You want to continue this hearing?

16         MR. LYNCH:  -- would like to file -- would you like to

17    file a motion on the -- on the --

18         THE COURT:  We're talking about your motion.

19         MR. LYNCH:  Yes, Your Honor.

20         THE COURT:  Would you put it in writing?

21         MR. LYNCH:  Yes.

22         THE COURT:  When?

23         MR. LYNCH:  You tell me.

24         THE COURT:  Is there any reason to continue this

25    matter right now?

1          MR. LYNCH:  Not on the basis that we've proceeded thus

2    far.

3          MS. CHANG:  If Mr. Lynch will continue we would only

4    request that the court award Mr. Remis fees and costs to

5    prepare --

6          THE COURT:  Well, this matter has been around so long

7    it doesn't make any difference if it goes a little bit more.

8          By the way, I might point out that much of the delay

9    was at the Ninth Circuit.

10         MR. LYNCH:  I -- Your Honor --

11         THE COURT:  Like 2 or 3 years.

12         But -- so you want to file a motion to --

13         MR. LYNCH:  I want to file a motion to challenge

14   the -- the declarations because they have all kinds of stuff in

15   them that are not proper in a Hague Convention proceeding.

16         THE COURT:  Okay.  When do you want to do that now

17   again?

18         MR. LYNCH:  Again, Your Honor, I'll let you -- you

19   tell me, but I would like a couple of weeks.  There's about 50

20   pages of stuff to go through, note-take --

21         THE COURT:  You want more than a couple of weeks?

22         MR. LYNCH:  Sure.

23         THE COURT:  Then you'll have to have time to respond.

24         MR. LYNCH:  Could we set a briefing schedule then?  I

25   would file my objections, they would have an opportunity to

1    respond?

2         THE COURT:  All right.  Can you get together and agree

3    on dates, or have you ever agreed on anything?

4         MR. LYNCH:  No, we can get together and agree on

5    dates, I think.

6         MS. CHANG:  It may take a while, but I think we can.

7         THE COURT:  Yes, why don't you get together -- you're

8    going to file something and they're going to respond and then

9    you're going to respond and then we'll set it for hearing.

10        MR. LYNCH:  Yes.

11        THE COURT:  And I guess the young man who's 14, we got

12   a year-and-a-half or so, he'll be 15 in June, I guess.

13        MS. CHANG:  Yes, Your Honor.

14        THE COURT:  So why don't you get together and give us

15   some dates.

16        MR. LYNCH:  You want to do it right now?

17        THE COURT:  Yeah.

18        MS. CHANG:  Your Honor, may I just clarify for the

19   court that, I know that because we -- we just got the permanent

20   resident card from Mrs. Lynch --

21        THE COURT:  You did what?

22        MS. CHANG:  We just received pursuant to our

23   subpoena --

24        THE COURT:  You just got that.

25        MS. CHANG:  Right.  And again, I would --

1      THE COURT:  If it brings to mind that you want to file
2  something, you could file something, too.
3      MS. CHANG:  Thank you, Your Honor.
4      THE COURT:  We're not going to get it squared away
5  unless you put it in writing.
6      MS. CHANG:  But since we have it here may I enter this
7  into evidence?
8      THE COURT:  Is that -- that's not an original, is it?
9      MS. CHANG:  That's the original.
10      THE COURT:  It's a copy?
11      MS. CHANG:  It's original, Your Honor.  It's her
12  actual card.
13      THE COURT:  Her original?
14      MR. LYNCH:  That's all I have.
15      THE COURT:  Does that belong to Mrs. Lynch?
16      MR. LYNCH:  To the extent it belongs to anybody --
17      THE COURT:  -- take the original away from her.
18      MR. LYNCH:  No, she doesn't carry it around.  She
19  doesn't use it.  It's no good.
20      THE COURT:  We don't worry about that.
21      MR. LYNCH:  Well, no, but let me make -- let me make
22  some copies.
23      THE COURT:  We'll receive it in evidence.
24      (Respondent's G was received in evidence.)
25      MS. CHANG:  Thank you.

1      MR. LYNCH:  May I make copies and submit a copy and --

2      THE COURT:  Make copies because -- we'll give it to

3  Mr. Lynch.

4      THE CLERK:  Judge, I'll make copies right now and

5  bring it right back.

6      THE COURT:  Yeah, we'll make copies.

7      MR. LYNCH:  Okay.  All right.

8      THE COURT:  And return it almost immediately.

9      So why don't you talk about dates.  We'll take a

10  15-minute recess.  How's that?

11      MS. CHANG:  Thank you.

12      THE COURT:  Okay?

13      MS. CHANG:  Yes, Your Honor.

14      THE COURT:  15-minute recess.

15      (A recess was taken from 10:45 a.m. to 10:55 a.m.)

16      THE COURT:  What happened?

17      MS. CHANG:  Your Honor, Mr. Lynch and I were able to

18  agree to some dates.

19      THE COURT:  A little louder and more slowly.

20      MS. CHANG:  Mr. Lynch and I have been able to agree on

21  some dates as the court had suggested.  But before we go

22  forward with that, I would like to place on the record, first

23  of all, the copy of Mrs. Lynch's green card or permanent --

24      THE COURT:  I think it's already been marked.

25      THE CLERK:  Yes, it has.

1          THE COURT:  As an exhibit by, I guess you're the

2   respondent.

3          MS. CHANG:  Yes, Your Honor.  And will the court

4   receive it into evidence?

5          THE COURT:  Have you agreed on dates?

6          MS. CHANG:  Yes.  We agree that whatever motions we're

7   going to file, they're due on March 9th, 2000 --

8          THE COURT:  What date?

9          MS. CHANG:  March 9th.  And whatever opposition memos

10  would be due on March 30th.  And any reply memo would be due on

11  April 10th, Your Honor.

12         THE COURT:  As long as it's not April 15th.

13         MS. CHANG:  No, Your Honor.

14         THE COURT:  Is that it?

15         MS. CHANG:  Well, Your Honor, I wanted to place on the

16  record that respondent --

17         THE COURT:  Wait, we got to set a hearing.

18         MS. CHANG:  Oh, I'm sorry.

19         THE COURT:  So in light of those filings, what date?

20         THE CLERK:  Judge, the earliest date will be May 9th

21  at 10:00 a.m.

22         THE COURT:  Which one?

23         THE CLERK:  May 9th at 10:00 a.m.

24         THE COURT:  May 9th at 10:00 a.m.

25         THE CLERK:  Yes.

1    THE COURT:  Will everybody be here?

2    MR. LYNCH:  Yes, Your Honor.

3    MS. CHANG:  That's fine, Your Honor.

4    THE COURT:  Is that okay with you?

5    MR. LYNCH:  That's fine, Your Honor.  Now, that would

6 be a hearing on the motions.  Can we get another date for a

7 hearing on the remand?

8    THE COURT:  The hearing on?

9    MR. LYNCH:  On the remanded case from the Ninth

10 Circuit.

11    (Court and law clerk conferring.)

12    THE COURT:  So what do you want to have hearing --

13 heard?

14    MR. LYNCH:  I don't have a preference, Your Honor.  I

15 just thought if we got the date now it would be a little bit

16 easier to schedule than ask for on May 9th.

17    THE COURT:  Yeah, we'll hear it the same time,

18 May 9th.

19    MS. CHANG:  Your Honor --

20    (Court and law clerk conferring.)

21    THE COURT:  If it's -- if it's a hearing motion we'll

22 let you know.

23    MR. LYNCH:  Okay.

24    THE COURT:  It might be a non-hearing motion.

25    MR. LYNCH:  I don't see how, but I understand, Your

1    Honor.

2            THE COURT:  Anything else this morning?

3            MR. LYNCH:  No, Your Honor.

4            MS. CHANG:  Yes, Your Honor.  I would like to place on

5    the record, Your Honor, that respondent is ready to proceed

6    based on Judge Kobayashi's order this morning.  And present

7    here are our witnesses.  One of them is Dr. Pamela Merez and

8    the other is Dr. Paul Deering.  And they're ready to take the

9    witness stand to, you know, have an opportunity to be

10   cross-examined by --

11           THE COURT:  Well, is there anything for me to do now?

12           MS. CHANG:  Yes, Your Honor, we would ask the court to

13   order that if they have to reappear for the next evidentiary

14   hearing, that Mr. Lynch should be the -- bear the cost of their

15   fees and costs, Your Honor.

16           THE COURT:  Well, I think that's something we'll take

17   up when it's all over.

18           MS. CHANG:  Thank you, Your Honor.

19           THE COURT:  It's a little difficult to decide costs

20   until you find out who's the one that should be paying it.

21           MS. CHANG:  All right.

22           THE COURT:  Anything further this morning?

23           MR. LYNCH:  No, Your Honor.

24           THE COURT:  God bless everybody.

25           MR. LYNCH:  Okay.  Thank you, Your Honor.

1          THE COURT:  Including America.

2          MR. LYNCH:  I don't necessarily agree with the last

3    statement by counsel, so I just want to put that on the record.

4          THE COURT:  Very well.

5          MR. LYNCH:  Thank you.

6          THE COURT:  Thank you.

7          (The proceedings concluded at 11:01 a.m., February 13,

8    2007.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    COURT REPORTER'S CERTIFICATE

2

3          I, CYNTHIA FAZIO, Official Court Reporter, United

4    States District Court, District of Hawaii, Honolulu, Hawaii, do

5    hereby certify that the foregoing pages numbered 1 through 39

6    is a correct transcript of the proceedings had in connection

7    with the above-entitled matter.

8

9          DATED at Honolulu, Hawaii, March 2, 2007.

10

11                         /s/ Cynthia Fazio

12                         CYNTHIA FAZIO, RMR, CRR

13

14

15

16

17

18

19

20

21

22

23

24

25