IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CATHERINE JANE VON KENNEL GAUDIN, | ) CIVIL NO. 00-00765 SPK-LEK <br> ) <br> ) |
| Petitioner, | ) |
| v. | ) <br> ) |
| JOHN R. REMIS, JR., | ) <br> ) |
| Respondent. | ) <br> ) |

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER DISMISSING PETITION

An evidentiary hearing on the remaining issues in this matter was held on May 30, 2007. Paul Lynch, Esq., appeared for Petitioner Catherine Gaudin, n.k.a., Catherine Lynch. Chunmay Chang, Esq., appeared for Respondent John R. Remis, Jr.

For the reasons set forth, the Court finds that it has been proven by at least a preponderance of the evidence that (1) Andreas W. Remis is of an age and maturity such that his views should be taken into account, and (2) Andreas W. Remis strongly desires to remain in the United States in his current situation with his father and strenuously objects to being returned to Canada. The Court, having

1

reviewed the evidence submitted and cognizant of the record and history of this case, therefore finds applicable the Article 13 defense to enforcement of a petition under the Hague Convention on the Civil Aspects of International Child Abduction, 19 I.L.M. 1501, implemented in the United States at 42 U.S.C. §§ 11601-11610 ("Hague Convention").  Accordingly, the Petition is DISMISSED.

I.

This case has a long and complex history.  It has resulted in three published opinions of the Ninth Circuit Court of Appeals,[1] and two prior evidentiary proceedings in this Court after two prior remands from the Ninth Circuit.[2]

On December 11, 2000, this Court found that a Canadian Court had already determined that Respondent's retention[3] of the children (John A. Remis, IV, and

---

[1] See Gaudin v. Remis, 282 F.3d 1178 (9th Cir. 2002) (Gaudin I); Gaudin v. Remis, 379 F.3d 631 (9th Cir. 2004) (Gaudin II); and Gaudin v. Remis, 415 F.3d 1028 (9th Cir. 2005) (Gaudin III).

[2] See Gaudin v. Remis, Order Denying Petition for Return of Children to Petitioner Pursuant to 42 USC 11601 et seq. (D. Haw. Dec. 11, 2000) [Clerk's Record ("CR") 15]; Gaudin v. Remis, Findings of Fact and Conclusions of Law, and Order Dismissing Petition as Moot (D. Haw. Mar. 3, 2003) [CR 51].

[3] The children had been living with their mother in Canada, with custody determined by 1994 Hawaii Family Court orders or judgments.  Respondent had retained the children after a summer visitation with him in Hawaii and after obtaining an order from the Hawaii Family Court temporarily changing its prior

(continued...)

Andreas W. Remis) was "wrongful" for purposes of the Hague Convention. The proceeding was focused on whether return of the children to Canada would present a "grave risk" of harm as set forth in the Hague Convention's Article 13(b) defense. The Court believed that Respondent had proven such a "grave risk" in 2000, and denied the petition. Petitioner appealed.

During the pendency of the appeal, Petitioner married her attorney Paul Lynch and moved to Hawaii. After proceedings which are not germane to the present issues, the Ninth Circuit eventually determined that this suit would be moot (i.e., the Hague Convention would not apply) if Petitioner had relocated "permanently" to Hawaii. See Gaudin I, 282 F.3d at 1183. It remanded with instructions to hold an evidentiary hearing to determine if she had moved permanently to Hawaii, and if so, to dismiss the case as moot. Id. at 1184.

Upon remand, this Court determined that Petitioner had indeed moved "permanently" to Hawaii. The determination was made mostly upon stipulated evidence but without inquiring into Petitioner's immigration status. The Court dismissed the Petition as moot, and Petitioner again appealed.

---

³(...continued)
1994 custody judgments. The custody determination was later changed from a temporary basis into a permanent one, and was then affirmed by the Hawaii Supreme Court during the pendency of these proceedings. The Court has not factored this Hawaii custody determination into whether an Article 13 defense applies in the present matter.

On appeal, the Ninth Circuit relied upon Petitioner's immigration status under 8 U.S.C. § 1101(a)(15)(B) and held that, given such status, she was "barred by law from possessing the requisite intent to establish domicile in Hawaii" and therefore could not have moved "permanently" to Hawaii, at least for Hague Convention purposes. Gaudin II, 379 F.3d at 638. The suit was not moot. The matter was transferred to the original panel for a determination on the merits.[4]

The original panel then found that this Court had erred in its December 2000 decision by improperly relying or deferring to certain ongoing proceedings in Hawaii Family Court. Gaudin III, 415 F.3d at 1036. The Ninth Circuit also determined -- without reaching the "grave risk" determination -- that this Court mistakenly failed to consider adequately alternative remedies ("undertakings") by which the children could be transferred back to Canada without risking psychological harm, and improperly relied upon the existence of ongoing custody proceedings in Hawaii courts. Id. at 1035. It found such deference counter to the purposes of the Hague Convention. Id. at 1035-36. It gave pertinent instructions to this Court as to further proceedings regarding the "grave risk" defense.

---

[4] In collateral proceedings, on May 9, 2007, this Court denied Respondent's new Motion to Dismiss Petition as Moot, which was made given information that Petitioner renewed a "green card" in 2003 indicating "lawful permanent residence" in the United States.

The Gaudin III decision also pointed out that a different defense in Article 13 had been raised but not emphasized. That "age and maturity" defense is set forth in Article 13, ¶ 2 of the Hague Convention. The Ninth Circuit said that "the district court should determine -- after any appropriate factfinding -- whether the children object to being returned and whether they are sufficiently mature for those views to carry weight." Id. at 1037. It also noted that such a determination should be made carefully so as to ensure that any statements made by the children are their own considered views and not merely the result of having lived so long with Respondent. Id. at 1037 n.3.

John A. Remis, IV, turned 16 on September 17, 2006, during the pendency of this litigation. The Hague Convention no longer applies to him. See Hague Convention, art. 4, 19 I.L.M at 1501. Current proceedings are now focused on Andreas W. Remis, who will turn 15 on June 23, 2007.

Thus, given the direction from the Ninth Circuit, the Court held a hearing to be able to address these basic lines of inquiry:

1. Is there a "grave risk" of psychological harm if Andreas Remis is returned? If so, are there "undertakings" that can be created so as to allow a Canadian Court to determine custody and minimize any such risk?

    This assessment is to be done under current conditions (not as they were six years ago). Gaudin III, 415 F.3d at 1036. This Court is not to be influenced by state court proceedings or determinations. Id.

> The Court must consider these alternative "undertakings" if it finds "grave risk." Id. at 1035.

2. Does Andreas Remis "object to being returned" and has he "attained an age and degree of maturity at which it is appropriate to take account of [his] views"? Id. at 1037 (quoting Hague Convention, art. 13 ¶2, 19 I.L.M. 1501, 1502 (1980)). If so, then the Court may refuse to order the return of Andreas Remis -- regardless of the grave risk determination (and even absent such a finding). Id.

## II.

During the evidentiary proceedings, the Court reviewed the declarations submitted in October 2006 from (1) John R. Remis, Jr., [CR 67], (2) Andreas Wailani Remis [CR 68], (3) John Anolani Remis IV [CR 69], (4) Pamela Boyer Merez, [CR 70], (5) Paul D. Deering [CR 71], and (6) Paul Lynch [CR 78]. The parties were permitted to cross-examine witnesses in court based upon their direct declaration testimony. The Court also admitted into evidence and considered several exhibits including pictures, school report cards, materials represented to be from Petitioner to the children, as well as original notes or drafts from the children as to their declarations that were submitted as direct testimony.

The Court notes that most of the testimony regarding events in 1999 and 2000 could be highly relevant to a custody determination in 2000 or 2001, but is only marginally relevant to a "grave risk" determination in 2007. The Court has only considered such testimony as background, as necessary to putting testimony

as to current events and conditions into context. In any event, the Court has focused primarily upon the "age and maturity" defense in Article 13 ¶ 2, and ultimately makes no determination of grave risk.

In addition to cross-examination of Andreas Remis by Petitioner's counsel, the Court met with Andreas in chambers and questioned him under oath in the presence of Court staff and a court reporter, but without counsel or his parents.

The Court, as part of a broad analysis of the record, has reviewed and credits the relevant evidence as to the maturity and current situation of Andreas Remis. The Court credits the testimony of his father (who lives and cares for him on a daily basis); of Paul Deering (who has certain experience in childhood development and who knows both Andreas and his brother John and their father as a family friend); and of his brother, John W. Remis, who is obviously close to his brother in many ways. The report of Pamela Merez was also helpful but not determinative.

The Court, however, mostly relies upon the testimony from Andreas Remis, both from in camera proceedings in chambers, as well as in open court. The Court observed and assessed the demeanor and attitude of Andreas, as well as the content and context of his answers to particular questions. The Court was careful to assess whether his answers were truly his own and not unduly influenced by having been

"wrongfully" retained or by any improper indoctrination. The Court found no reason to believe he was prevaricating.

Andreas is doing well in school. He appears to be in a good situation at home. He has adapted well to Hawaii. He is mature and intelligent. He is articulate and acts and speaks like a person beyond his current age (nearly 15). He understands the basics of the on-going proceedings (although the Court doubts he understands all the legal intricacies of the Hague Convention). What he knows is that he is happy now, and does not want, by any means, to be returned to Canada, even for a few months for further legal proceedings. The Court suspects that this has all been true for several years.

The Court finds that it has been proven by at least a preponderance of the evidence[5] that Andreas Remis is of an age and maturity such that his views should be taken into account. The Court further finds that he objects to being returned to Canada for further legal proceedings to determine custody matters.

Article 13 of the Hague Convention excuses the duty to return a child to his or her country of "habitual residence" if (1) a respondent proves, by a

---

[5] See 42 U.S.C. § 11603(e)(2)(B) ("In the case of an action for the return of a child, a respondent who opposes the return of the child has the burden of establishing -- by a preponderance of the evidence that any other exception [i.e., besides article 13b or 20] set forth in article 12 or 13 of the Convention applies.").

preponderance of the evidence, that a child is of sufficient maturity and objects to repatriation and, (2) if, in its discretion, the Court chooses to honor the child's wishes. Blondin v. Dubois, 238 F.3d 153, 166 (2d Cir. 2001); England v. England, 234 F.3d 268, 272 (5th Cir. 2000); see also Silva v. Pitts, 481 F.3d 1279, 1286 (10th Cir. 2007) (concluding under the particular circumstances of that case that it was appropriate to refuse repatriation to Canada and allowing custody proceedings to occur in the United States).

> As stated in Silva,
>
> [T]he Convention also provides that the child's views concerning the essential question of its return or retention may be conclusive, provided it has, according to the competent authorities, attained an age and degree of maturity sufficient for its views to be taken into account. In this way, the Convention gives children the possibility of interpreting their own interests. Of course, this provision could prove dangerous if it were applied by means of the direct questioning of young people who may admittedly have a clear grasp of the situation but who may also suffer serious psychological harm if they think they are being forced to choose between two parents. However, such a provision is absolutely necessary given the fact that the Convention applies, ratione personae, to all children under the age of sixteen; the fact must be acknowledged that it would be very difficult to accept that a child of, for example, fifteen years of age, should be returned against its will. . . . It seemed best to leave the application of this clause to the discretion of the competent authorities.

481 F.3d at 1286 (quoting the "Perez-Vera Report" at 433, ¶ 30) (emphasis in

original).[6]  This Court understands and agrees that the inquiry is "fact-intensive and idiosyncratic." Id. at 1287.

As mentioned, the Court has considered the testimony at the evidentiary hearing, as well as the particular procedural and factual circumstances of this case (but has not relied upon, nor been influenced by, past Hawaii family court proceedings).  The Court, in its discretion, chooses to honor Andreas Remis's wishes and to apply the Article 13 ¶ 2 defense.  The Court finds as a matter of law that the defense applies and that it is appropriate to refuse to return Andreas Remis to Canada.  Because of such a determination, the Court need not make any determination of the "grave risk" exception under Article 13(b).  See Gaudin III, 415 F.3d at 1037.

---

[6] The "Perez-Vera Report" is recognized as official commentary to the Hague Convention:

> References to the "reporter" are to Elisa Perez-Vera, the official Hague Conference reporter for the Convention.  Her explanatory report is recognized by the Conference as the official history and commentary on the Convention and is a source of background on the meaning of the provisions of the Convention available to all States becoming parties to it.  It is referred to herein as the "Perez-Vera Report."  The Perez-Vera Report appears in Actes et documents de la Quatorzieme Session (1980), Volume III, Child Abduction, edited by the Permanent Bureau of the Hague Conference on Private International Law, The Hague, Netherlands.

51 Fed. Reg. 10494-01, 10504 (March 26, 1986).

For the foregoing reasons, the Petition is DISMISSED.

IT IS SO ORDERED.

DATED: June 1, 2007.



_____
Samuel P. King
Senior United States District Judge

Gaudin v. Remis, Civ. No. 00-00765 SPK-LEK, Findings of Fact, Conclusions of Law, and Order Dismissing Petition